STATE of Missouri, Respondent,

v.

Walter Gene HOLMES, Appellant.

No. 52247.

Supreme Court of Missouri,
Division No. 1.

Dec. 9, 1968.

Norman H. Anderson, Atty. Gen., Jefferson City, William A. Moffitt, Jr., Sp. Asst. Atty. Gen., St. Louis, for respondent.

Harold A. Kyser, Belisle, McNabb & Kyser, Butler, for appellant.

WILLIAM H. BILLINGS, Special Judge.

Defendant was prosecuted under the Second Offender Act for burglary and steal-ing and upon the jury's finding of guilty on both charges, the trial court sentenced defendant to a term of 10 years for burglary and 5 years for stealing, the sentences to be served concurrently. On this appeal defendant's sole contention is that the convictions were based upon circumstantial evidence that was insufficient to establish his guilt, and therefore, the trial court erred in overruling his motions for judgment of acquittal and for a new trial. For the reasons hereinafter appearing it is our view that the evidence was sufficient to support the jury's findings but reversal of the judgment and sentence is required because of insufficient findings by the court of the applicability of the Second Offender Act.

Maude Hayes was the operator of a beer tavern located twenty miles from Butler, Missouri, and about five miles east of Hume. Maude lived in rooms in the rear of the tavern and her husband lived in a cabin on a river. Maude and defendant knew each other, the defendant having performed various odd jobs and errands for her. Defendant resided with his mother and stepfather in Worland.

On the date of the crime, November 22, 1965, Maude requested defendant to pick up some groceries for her and gave him a grocery list and five dollars. Defendant picked up the groceries in Rich Hill and returned to the tavern with them in the afternoon. The groceries amounted to $5.27 and Maude gave defendant two bottles of "pop" worth twenty cents, a nickel and two cents. Defendant left the tavern about 5 o'clock P.M. and returned to his residence where he remained until about 6:30 o'clock P.M. before leaving and returning to the tavern. He ordered a beer and paid Maude 20 cents and told her he would have to owe her the remaining five cents because he did not have enough money to pay the full amount. Maude replied this was all right. It was Maude's practice that when someone charged a purchase she put a ticket in the cash register drawer with the person's name and the amount owing her on it.

After the beer transaction with defendant, Maude went into her living quarters to turn off the television set. When she returned to the tavern portion of the building the defendant was going out the front door. She asked him if he was coming back but he did not answer. She sat down and shortly afterwards heard a "little racket" near a west window. She looked east, heard a loud shot and felt a stinging sensation in her ear and blood began running down her face. She went to the rear of the tavern to get a wash cloth and upon returning to the bar-room saw the defendant come running in the front door. He was not carrying a gun. Defendant said someone was shooting at him, that "they" were not shooting at Maude, but "they are after me". Defendant then suggested the tavern light be put out and turned it off. He then went out the front door and Maude telephoned the sheriff. This was about 7:00 o'clock P.M. Defendant came back in the tavern and this time he had a gun in his hand and suggested that a bullet might be in Maude's head and an ambulance should be called to take her to the hospital. Maude said she wanted to wait for the sheriff. Defendant helped Maude attempt to telephone a doctor. Deputy Schwander arrived at the tavern about 7:30 o'clock P.M. Maude was sitting and blood was running down her head. Defendant was nearby. The deputy asked Maude what the trouble was and she told him they could not get a doctor and the deputy said he would take her to Butler. The defendant was told to remain there outside the tavern and was near his truck when Maude and the deputy departed. The doors and windows to the building were all locked and all lights turned off.

Defendant appeared at the Fay Wehar home about a mile and a quarter from the tavern between 7:00 o'clock and 8:00 o'clock

P.M. in his truck. He acted "quite nervous" and "talked real fast". He asked to use the telephone to call the sheriff saying someone had taken a shot at him through the windshield. The sheriff received defendant's call about 8:30 o'clock P.M. and instructed defendant to remain at the tavern. After Maude had been treated at the hospital she and Deputy Schwander left the hospital and arrived back at the tavern between 9:00 o'clock and 9:25 o'clock P.M. When Deputy Schwander arrived at the tavern Maude unlocked the door and pulled on the light. She did not see where Deputy Schwander went. The deputy saw defendant on the roof of the tavern. Sheriff Sivils and Deputy Mills arrived shortly after Maude and Deputy Schwander and went looking for the defendant. The sheriff called out to defendant who came around from the rear of the tavern building. He was advised by the sheriff that he was under arrest for investigation and was asked for his gun. Upon defendant's compliance with this request the gun was placed in the sheriff's automobile. The defendant told the sheriff of two shots through the windshield of his truck and these were examined by the parties and the back seat of the truck was removed in a futile search for bullets. However, during the search for the bullets the sheriff discovered some papers, cigarettes and money down at the side of the truck and upon his inquiry of defendant about these the defendant told the officer that he was going "to go to the bank for Mrs. Hayes the next morning".

In the meantime Maude had entered the tavern and saw a carton of cigarettes on the floor. Since the carton had not been there when she left for the hospital she went to the cash register to check it and found a lock on it that she had left pushed down had been pulled up and that about thirty dollars had been removed from the register. Additionally, papers and charge tickets kept beneath the till had been removed. She went to the kitchen where she kept a "secret box" and a "secret place" and discovered a two-dollar roll of nickels, checks

and other things were missing. Two cartons of Camel cigarettes and one carton each of Winston and L & M cigarettes were gone from the tavern. Maude notified the officers of the burglary. In defendant's truck the sheriff found items which Maude identified as hers and that she kept beneath the register till. These were a charge ticket with defendant's name on it for four beers and some money, the grocery ticket list she had given defendant the same day and a charge ticket with another individual's name on it. Various other articles found by the sheriff in defendant's truck and identified by Maude as her property were admitted. The defendant had a two-dollar roll of nickels in his pocket. The officer also stated that some of the items were in a cigarette carton in the truck. Fifty one-dollar bills were found in the bottom of the side of the truck with tools, rags and bottles on them. The sheriff said he asked defendant where he obtained the dollar bills and the defendant said that was for the sheriff to find out. The sheriff then arrested defendant for burglary.

Defendant did not testify but did offer evidence in his defense. His sister testified that when she saw him four days before the burglary the defendant had $50.00 in a roll of bills in an old glove and on November 20 she and her husband paid defendant $18.00 in cash. Another witness testified she paid defendant $15.00 by check dated November 13 for labor and gave defendant a check for $6.50 dated November 22 for labor and another check for $2.00 dated the same date for cartage. Maude's endoresment "for deposit only" was on the $6.50 check. Defendant's stepfather said that about two weeks before Thanksgiving while defendant was visiting him in Kansas City he gave defendant two one-dollar bills and a two-dollar roll of nickels.

Investigation by officers the night of November 22 and the next morning revealed one of the west tavern windows was partially raised, a bullet hole in another win-

dow, evidence of tampering with south and west windows and a bullet in a door facing.

■ In testing the sufficiency of evidence in a criminal prosecution by a motion for a judgment of acquittal, the facts in evidence and the favorable inferences reasonably to be drawn therefrom must be considered in the light most favorable to the state and all evidence and inferences to the contrary must be disregarded. State v. McClinton, Mo., 418 S.W.2d 55; State v. Burrage, Mo., 418 S.W.2d 101.

■ It is defendant's position that his convictions were based wholly on circumstantial evidence, and, therefore the circumstances must be consistent with each other and be inconsistent with any reasonable hypothesis except that of guilt. We agree that the latter proposition is the law of this state. State v. Allen, Mo., 420 S.W.2d 330. The evidence in this case clearly shows a burglary occurred at the tavern between 7:30 and 9:30 o'clock the night of November 22, 1965, and that various items and monies were stolen therefrom. All windows and doors were locked before Maude and the deputy left for the hospital and one window was partially raised and others showed signs of having been tampered with shortly after they returned to the tavern. Merchandise, money and papers were in the tavern in different locations at the time Maude left for the hospital and they were missing when she returned.

■ It is the law of Missouri that possession of recently stolen property is sufficient to sustain a conviction of larceny. Further, that an inference of guilt is permissible from the possession of property recently stolen in a burglary, and the inference exists both as to the burglary and the stealing. State v. Burrage, Mo., 418 S.W.2d 101; State v. Durham, Mo., 367 S.W.2d 619; State v. Denison, 352 Mo. 572, 178 S.W.2d 449. As we said in Burrage, supra, 418 S.W.2d at l. c. 104: "To authorize such inference of guilt, the defendant's

possession of the property should not be too remote in point of time from the larceny, and 'it should be a personal possession, exclusive, distinct and conscious, and unexplained'. State v. Durham, supra, [367 S.W.2d] l. c. 622."

Defendant was on the roof of the tavern when Maude and the deputy returned. While defendant's truck was being examined by the sheriff *and* the defendant for the bullets that caused the holes in the windshield of his truck articles which later proved to have been in the tavern earlier were found in the truck. In reply to the sheriff's inquiry as to some of the items the defendant stated he was going to take them to the bank in the morning. When defendant was asked by the officer where he obtained the fifty one-dollar bills, the defendant said that was for the sheriff to find out. The grocery list prepared by Maude and the charge tickets to defendant and another person were under the till in the cash register in the tavern approximately two hours earlier. Several cartons of cigarettes and money had also been taken from the tavern during this period. The grocery list, charge tickets, cigarettes and fifty one-dollar bills were found in remote areas of defendant's truck, partially concealed. A roll of nickels was missing from the tavern and a roll of nickels was found on defendant's person.

■ The evidence in this case shows more than mere presence of the defendant at the scene of the crime and an opportunity to commit the offenses. The defendant did not have enough money to pay the full price for a beer at the tavern shortly before the tavern was burglarized. He was at the tavern when Maude and the deputy went to the hospital and Deputy Schwander saw him on the roof of the building when they returned. In response to the sheriff's call he came around from the rear of the tavern. He used his truck to drive to the Wehar home to make the telephone call to the sheriff and the truck was parked near the tavern when the officers arrived at the

scene. Recently stolen articles from the tavern were discovered inside his truck down beside the seat. Although offering no explanation at trial, defendant's statements to the sheriff at the time the articles were found in his truck show the personal possession required for an inference of guilt. We have noted the defendant approximately two and one-half hours earlier was unable to pay the full purchase price for a beer. It is our judgment that the evidence was sufficient to support the findings of defendant's guilt of both burglary and stealing.

Defendant cites two cases in support of his contention that the court erred in overruling his motion for judgment of acquittal. We pointed out in *Burrage,* supra, that in State v. Watson, Mo., 350 S.W.2d 763, one of instant defendant's authorities, the defendant in that case was a *passenger* in a car in which some stolen goods were found and that the driver of the car testified that he, another man, and two women had committed the burglary; that defendant had nothing to do with the crime and had been picked up later hitchhiking. In *Watson* the court concluded that the evidence was not inconsistent with the defendant being a hitchhiker and wholly innocent of the burglary and stealing, and reversed the conviction. In so doing we held that the evidence did not establish possession of the stolen goods by the defendant so as to justify an inference of his guilt. As we ruled in *Burrage,* we hold *Watson* is not analogous to the case before us.

In State v. Hampton, Mo., 275 S.W.2d 356, defendant's other authority, thirty dollars and six quarts of whiskey had been taken from a tavern. Part of the money taken consisted of a five-dollar roll of dimes wrapped in green paper. Defendant lived close to the tavern and frequented it. In the afternoon of the day of the burglary defendant was arrested and a search of his person disclosed a five-dollar roll of dimes wrapped in the same kind of green paper as that of the dimes which had been stolen.

Defendant's fingerprint was on a bottle of whiskey found on the floor close to the cabinet from which the six bottles had been removed. In ruling that there was no evidence sufficiently identifying the roll of dimes defendant had as that taken from the tavern, the court held this circumstance was not substantial evidence inconsistent with a reasonable hypothesis of defendant's innocence. We also held *that the defendant's possession of the particular wrapped roll of dimes on the same day of the burglary was a circumstance admissible in evidence.* The decisive question was whether defendant's fingerprint on the bottle was alone sufficient substantial evidence to sustain the conviction and we answered this in the affirmative. Standing alone the circumstance of defendant's possession of the roll of nickels in this case would call for the same ruling as in *Hampton* since the evidence failed to sufficiently identify the roll of nickels as being the same roll of nickels taken from Maude's tavern. However, defendant's reliance upon *Hampton* ignores the various other circumstances detailed herein which we have held constitute sufficient substantial evidence to sustain his conviction.

█ In our review of the record as required by Supreme Court Rule 28.02, V.A.M.R. we are confronted with the identical problem which resulted in our reversing the convictions under the Habitual Criminal Act in State v. Garrett, Mo., 416 S.W.2d 116. As in *Garrett* this matter was not raised in defendant's motion for new trial or briefed on this appeal but pursuant to Rule 28.02 we have examined the record without assignment or specification. The information alleged the prior conviction of the defendant in Kansas of second degree burglary and his commitment in the Kansas State Industrial Reformatory. The State offered and the Court received certified copies of the Journal Entry of Judgment in Case No. 11714 of the District Court of Linn County, Kansas, in the case of State of Kansas v. Walter Gene Holmes, and, Record of Walter Gene Holmes in the

**560**

Kansas State Industrial Reformatory. Various objections were leveled at the documents by defendant but they were overruled and the documents received in evidence as State's Exhibits 13 and 14. The record shows the following finding by the Court: "The Court finds that Exhibits 13 and 14 are admissible in evidence and that they prove the prior conviction of the defendant Walter Gene Holmes." As was said in *Garrett*, supra, we conclude that this was not a sufficient compliance with § 556.280, RSMo 1959, V.A.M.S., and that in order for the Second Offender Act to be applicable "* * * *the Court must find that the defendant had been convicted of and sentenced for one or more offenses punishable by imprisonment in the penitentiary and that he had subsequently been imprisoned, fined, paroled or placed on probation therefor (in the alternative, to accord with the evidence)*. See, State v. Crow, Mo., 388 S.W.2d 817, and State v. Hill, Mo., 371 S.W.2d 278." (Our emphasis).

The foregoing findings of the Court fall short of the statutory mandate and the judgment and sentence of the defendant must be reversed and set aside and the cause be remanded in order that the procedure we outlined in *Garrett* can be followed by the trial court. If the trial court makes the requisite findings in accordance with the statute it may proceed to grant allocution and to render judgment and sentence; if not, then a new trial must be ordered so that the jury assesses the punishment.

Our review of the record of the other matters as required by our Rule 28.02 discloses no error. The judgment and sentence of the defendant is reversed and set aside, and the entire cause, is remanded to the trial court for further proceedings in accordance with this opinion.

SEILER and STORCKMAN, JJ., concur.

HENLEY, P. J., not sitting.