James (Buddy) WILLIAMS, Appellant,

v.

STATE of Missouri, Respondent.

Nos. 56041–56043.

Supreme Court of Missouri,
Division No. 1.

Nov. 8, 1971.

As Modified on Court's Own Motion
Dec. 13, 1971.

David E. Blanton, Blanton, Blanton, Rice & Sickal, Sikeston, and John R. Fowlkes,

Fowlkes & Hendricks, Caruthersville, for appellant.

John C. Danforth, Atty. Gen., John B. Mitchell, Jr., Asst. Atty. Gen., Jefferson City, for respondent.

WELBORN, Commissioner.

By informations in the Pemiscot County Circuit Court, filed in February, 1962, James (Buddy) Williams was charged with first degree murder in the death of Brenda Joyce Raines, forcible rape of Miss Raines, and first degree murder in the death of her companion, Frank Craig. The causes were taken to Scott County on change of venue and trial held on the charge of murder of Miss Raines. A jury found defendant guilty and fixed his punishment at death. On appeal to this court, decided July 8, 1963, the conviction was reversed and the case remanded.

On August 2, 1963, Williams appeared in the Scott County Circuit Court. Pleas of guilty were entered on all three charges and a life sentence was imposed in each case.

On December 24, 1969, Williams filed a motion under Supreme Court Rule 27.26, V.A.M.R., in the Scott County Circuit Court, seeking to have the judgment and sentence in each case set aside on the grounds that his pleas were involuntary and that the record in the cases failed to demonstrate a voluntary guilty plea. A hearing was held and the trial judge denied relief, finding that the pleas had been voluntarily entered and that the movant had failed to sustain his burden for relief under Supreme Court Rule 27.26. This appeal followed.

As noted in the prior appeal in this court, Williams had stood mute upon his arraignment for the charge on which he was tried and a not guilty plea entered on that basis. He refused to cooperate with his appointed attorneys, Mr. George K. Reeves and Mr. Robert Dempster. The defendant refused to answer any questions

asked by his attorneys and did not talk to them. Upon psychiatric examination, a psychiatrist at Fulton State Hospital concluded that Williams was not insane and that his muteness was "the only defense mechanism that a person of his mental caliber is probably capable of using." Mo., 369 S.W.2d 410 (43 years of age at the 27.26 hearing, Williams testified that he had completed the third grade of school. His ability to speak does not appear to have been impaired at the time of the hearing.)

At the hearing, Mr. Dempster testified that, after the reversal of the movant's conviction, he conferred with him three or four times in the Scott County jail but the defendant continued to remain mute, although he showed some emotion and Dempster thought he understood what was said. Mr. Dempster testified:

" * * * I told the defendant Williams that we had obtained for him a new trial, that the State would retry this case, that it was my opinion and it certainly was shared by Mr. Reeves that the same evidence would be introduced at the second trial and the same result could very well be reached and that he could very well receive the death sentence. I explained to him that the error that had been made by the State in the first trial could very easily and simply be corrected and a new instruction could be rendered and given to the jury which would satisfy the Supreme Court's ruling, and that I felt, strongly felt, that if his life was to be saved, that he should authorize me or us, meaning Mr. George Reeves and I, to enter a plea of guilty, that I felt that the Court would not in my opinion impose the supreme penalty. I talked at some length about the death sentence, the supreme penalty, and what could very well happen to him, that we had two serious cases pending and asked him if he would authorize us to enter a plea of guilty for him. He would not respond verbally or audibly. I said, 'Buddy, if you do not want to talk to me, give me some sign that you want a plea entered.' I said, 'Now, if you will tell me by moving your hands upward and downward that you wish a guilty plea to be entered, I will understand you.' I remember well because he had his handcuffs on and his hands in front of him, and he made that gesture to me, and I believe I communicated that to Mr. Reeves. I am not sure whether Mr. Reeves was present, but it was in this courthouse that I had that conversation with him and we spoke at some length. I spoke at some length to this defendant."

Mr. Dempster testified that he discussed each of the three cases with the defendant, "in depth." He testified that he did not discuss the possibility that consecutive sentences would be imposed in the three cases. "The point that I discussed with him, which I thought overshadowed everything, was saving this man's life and that was what was paramount."

Mr. Reeves also testified to movant's muteness. He stated that on the date of the pleas, he and Mr. Dempster conferred with Williams and advised him that in their opinion, he would not receive a death sentence if he pleaded guilty to the charges. " * * * [W]e told him on that basis that was what we were going to do was plead him guilty on all three counts. He made no statement." Mr. Reeves saw no sign which indicated movant's approval of such action.

The transcript of the proceedings at the time of the pleas shows the following transpired:

"MR. REEVES: Your Honor, we would like for the record to show that the defendant is pleaded guilty.

"THE COURT: First let's start with the Case No. 6,094. Of course the defendant is in the courtroom and the attorneys. You gentlemen feel you are in a position —first of all, the defendant certainly in this case has been formally arraigned. If there would be any necessity of further arraignment, would you waive that or do you want me to read the information?

"MR. REEVES: We will waive arraignment.

"MR. DEMPSTER: We waive arraignment. The defendant has not only been advised by this court but he has been advised by us today of the seriousness of his charge.

"THE COURT: All right. This is the case in which the Supreme Court has sent back for a new trial previous conviction and sentence to the death penalty; therefore, when the mandate came down it was placed back on the docket for the purpose of retrial or trial. Now, are you gentlemen in a position at this time to announce to the court what plea you desire to enter on this charge of 6,094 which is the murder charge in connection with the girl?

"MR. DEMPSTER: Come up here, Buddy.

"THE COURT: You are—is your name Buddy Williams? Your name James Williams? Do you know what your name is? Did you talk to your lawyers this morning? Do you know what plea you want them to enter for you in these cases? Okay, have a seat. I guess we just as well pick a date, hadn't we?

"MR. VICKREY: Your Honor, as I understand now, the defendant has conferred with his attorneys here on this matter of a plea of guilty or not guilty, and he has indicated to them what his desire is and authorized them to enter a plea for him, is that correct?

"MR. REEVES: Via sign language, yes.

"MR. VICKREY: You understand that is what he wants to do?

"MR. REEVES: We think we do, yes, sir.

"MR. DEMPSTER: We wouldn't be taking the position we did if we thought to the contrary.

"MR. VICKREY: I am sure you did.

"THE COURT: Gentlemen, what plea do you want to enter for the defendant?

"MR. REEVES: Guilty, Judge, to all three of them.

"THE COURT: All right. 6094 is the one we have discussed thus far. [Charge in 6095, murder of Craig, read] That is 6095. The plea to that?

"MR. REEVES: Guilty, Your Honor.

"THE COURT: 6093, State versus Williams, [Charge of rape read]. What plea to that charge?

"MR. REEVES: Guilty, Your Honor.

"THE COURT: All right. Do you have anything you want to say before I sentence this defendant?

"MR. VICKREY: Your Honor is familiar with the facts of the case from a previous trial. It is one of the most brutal cases we have had in Southeast Missouri all the time that I know of and we recommend that the supreme penalty be imposed in each of the three cases, Your Honor.

"THE COURT: All right. Buddy, you come up here. Case No. 6094, a plea of guilty having been entered by the defendant, the defendant is sentenced—

"MR. VICKREY: Is this the one that was tried?

"THE COURT: Yes. 6094, having entered a plea of guilty, the defendant is sentenced to spend the rest of his natural life in the penitentiary, ordered committed to the State Department of Corrections for the period of his natural life. James, do you have anything to say before the Court pronounces sentence or any reason to give why sentence should not be pronounced? Allocution and sentence. 6095, having entered a plea of guilty to the charge, the Court sentences the defendant to spend the remainder of his natural life in the penitentiary, ordered committed to the State Department of Corrections for the period of his natural life. James, do you have

anything to say before the Court pronounces sentence? Case No. 6093, having entered a plea of guilty, the Court sentences defendant to spend the remainder of his natural life in the penitentiary, ordered committed to the State Department of Corrections for his natural life. James, do you have anything to say before the Court pronounces sentence or any legal reason to give why sentence should not be pronounced? Allocution and sentence. All right. Mr. Sheriff."

On the 27.26 hearing, Williams testified that neither of the attorneys talked to him before entry of the pleas. He recalled being before Judge Craig on August 2, 1963, but denied knowing what occurred and denied authorizing his attorneys to enter pleas on his behalf.

The here relevant findings of the trial court were that the pleas of guilty were voluntary, that the movant had failed to meet his burden under Supreme Court Rule 27.26, V.A.M.R. The court further found:

"Movant may not withdraw his plea of guilty as a matter or right, but has the burden to prove by preponderance of the evidence facts alleged in his motion demonstrating that manifest injustice resulted from accepting his plea of guilty. Peterson v. State [Mo.], 444 S.W.2d 673. He did not sustain that burden.

"The movant failed to show that his constitutional rights were violated and he has not met the burden of proof necessary for the relief he seeks under Supreme Court Rule 27.26."

On this appeal, the trial court's ruling is attacked as erroneous on the grounds that: "(A) The defendant did not enter a plea of guilty nor did he authorize anyone else to enter a plea of guilty to any of the * * * offenses. (B) The court should not have accepted the purported pleas of guilty without first determining that the alleged pleas were made voluntarily with understanding by the defendant of the nature of the charges."

The latter contention is meritorious and requires reversal of the judgments appealed from. The record of the acceptance of the pleas shows lack of compliance with Supreme Court Rule 25.04, V.A.M.R.

The most that the evidence shows is that each charge was discussed "in great detail" and "in depth." These conclusionary statements are not adequate to show that movant was advised of the nature of the charges or the range of punishment for the offenses or of the consequences of his pleas as waiving constitutional rights, and cannot be taken to show that movant knew and understood such matters at the time of his pleas. State v. Reese, Mo.Sup., 457 S.W.2d 713. The trial court erred in finding on this record that the pleas had been voluntarily entered.

Reversed and remanded with directions to enter judgment setting aside conviction and permitting withdrawal of plea in each of the three cases, and for further proceedings thereafter according to law.

HOUSER and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the court.

Opinion modified on court's own motion.

All of the Judges concur.