**STATE of Missouri, Respondent,**

v.

**James (Buddy) WILLIAMS, Appellant.**

**No. 10420.**

Missouri Court of Appeals, Springfield District.

July 19, 1977.

Motions for Rehearing or Transfer Denied Aug. 8, 1977.

Application to Transfer Denied Sept. 12, 1977.

Fielding Potashnick, Sikeston, Joe Perry Rice, III, Chaffee, for appellant.

John C. Danforth, Atty. Gen., Robert M. Sommers, Asst. Atty. Gen., Jefferson City, for respondent.

Before BILLINGS, C. J., and HOGAN and FLANIGAN, JJ.

FLANIGAN, Judge.

By separate informations [1] defendant was charged with the rape and murder of Brenda Joyce Raines and the murder of Frank Craig, each offense occurring on December 22, 1961. In 1962 the trial of the case involving the murder of Miss Raines resulted in a conviction and a sentence of death. On appeal that judgment was reversed and the cause remanded. *State v. Williams,* 369 S.W.2d 408 (Mo. banc 1963).

Later in 1963 defendant entered pleas of guilty to the three charges and a life sentence was imposed in each case. In 1969 defendant filed a motion under Rule 27.26 attacking each judgment and sentence on the ground that his plea was involuntary. His attack was successful and the supreme court ordered the setting aside of each conviction and the withdrawal of each plea. *Williams v. State,* 473 S.W.2d 97 (Mo.1971).

In June 1974, the trial court having previously sustained the state's motion to consolidate the trials of the three cases, a jury found defendant guilty of the first degree murder of Frank Craig, the rape of Miss Raines and the second degree murder of Miss Raines. A sentence of life imprisonment was imposed for each offense, the sentences to run consecutively. Defendant appealed to the supreme court and that tribunal, noting its lack of jurisdiction, transferred the three cases to this court.

The first of defendant's 14 "points relied on," each unavailing, is that the trial court erred in permitting a private attorney, Mr. James A. Vickery, to participate in the prosecution of the cases. In February 1974 the trial court appointed Mr. Vickery "as special assistant prosecuting attorney for this particular case," the appointment to be "charged to the County of Pemiscot so far as any expenses in connection with his ap-

---

1. In the trial court the cases bore these numbers: No. 6093 (rape), No. 6094 (murder of Miss Raines), and No. 6095 (murder of Craig).

pearance in the prosecution of the case are concerned." Mr. Art Stephenson was the prosecuting attorney. He informed the court that Mr. Vickery had agreed to serve at his request and with the approval of the county court. Defendant's counsel introduced the testimony of Mr. Vickery to the effect that he understood the county court was to pay him $500 for acting as special prosecutor. Mr. Vickery had represented the state in the 1962 trial.

■ In *State v. Harrington*, 534 S.W.2d 44, 48[2] (Mo. banc 1976) the supreme court held "that the practice of allowing *private* prosecutors, employed by *private* persons, to participate in the prosecution of criminal defendants, is inherently and fundamentally unfair, and that it should not be permitted . . . in any case tried after publication of this opinion in the Southwestern Reporter." The *Harrington* opinion was published in the Southwestern advance sheet of April 20, 1976, almost two years after the instant cases were tried. It seems clear, from the foregoing language, that the ruling in *Harrington* is inapplicable.

Referring to its prior holdings the court in *Harrington* at p. 49 said:

"This Court has recognized the inherent vice and potential prejudice arising from the participation of privately retained prosecutors in the prosecution of criminal defendants, but, nevertheless, has yet to strike down a conviction because of a private prosecutor's participation. The decisions have cast the burden on the defendant to allege and prove prejudice. We have come to believe that, by reason of the public policy enunciated by the Legislature, such a burden is unwarranted."

■ For the purpose of this opinion this court will assume that Mr. Vickery was a "private prosecutor," as the term is used in *Harrington,* although he was to be paid by the county court rather than by private persons, such as relatives of the victims. The reasons stated in *Harrington* for precluding the services of "private prosecutors employed by private persons" apply with no more vigor to Mr. Vickery and the circum-

stances of his employment. He was, perhaps, somewhat more of a public prosecutor than was the special prosecutor in *Harrington.*

Defendant's first point must fail because this case was tried prior to the publication of the *Harrington* opinion and because defendant has not, in his first point, "alleged and proven prejudice." Nor is such proof found in the facts alluded to in defendant's argument. As will be seen, the only attack made by defendant upon Mr. Vickery's trial conduct is leveled at his closing argument and that attack is without merit. The fact that the attorney making the argument was a special prosecutor and not the regular prosecutor would not create prejudice where none existed otherwise.

■ Defendant's second point is that the trial court erred in failing to dismiss, on defendant's motion, Cases 6093 and 6095 because, in those two cases, "defendant was not granted a speedy trial in violation of § 545.920 RSMo and Rule 25.01 (V.A.M.R.)."

The informations in 6093 and 6095 were filed in the Circuit Court of Pemiscot County on February 5, 1962. On August 2, 1963, the defendant entered a plea of guilty in each case. The only delay of which defendant's brief complains is the period between February 5, 1962, and August 2, 1963.

The record shows that the following events took place during the period under scrutiny: February 5, 1962—An information was filed in each of the three cases in the Circuit Court of Pemiscot County. March 5, 1962—In each case, Attorney George K. Reeves was appointed counsel for defendant, defendant entered a plea of not guilty, and the case was set for trial on April 6, 1962, "by agreement of the parties." April 14, 1962—Defendant filed an application for change of venue in each case. April 17, 1962—Each case was transferred to the Circuit Court of Scott County. June 22, 1962—Case No. 6094 was tried, defendant was convicted, and he was sentenced to death. July 8, 1963—Supreme Court of Missouri reversed the judgment in Case No. 6094 and remanded. August 2, 1963—Defendant entered a plea of guilty in the three cases.

Sections 545.890 through 545.920, the latter being the statute on which defendant relies, were discussed in *State v. Morton,* 444 S.W.2d 420, 423[2] (Mo.1969). Those four statutes, said the court, "prescribe the standards under which a defendant is entitled to be discharged if he is not brought to trial in the time and manner therein provided. They are in the nature of special statutes of limitation and have no counterpart in the Supreme Court Rules. . . . These statutes in effect limit the number of continuances that may be granted the state 'for cause' under § 545.780 and Rule 25.01."

The court in *Morton* pointed out that Rule 25.01 is a rescript of § 545.780 and said, at p. 423:

"Rule 25.01 and § 545.780 specifically authorize continuances 'for cause' and do not purport to be a limitation of the criminal action. The time and manner in which continuances on behalf of the state will entitle the defendant to be discharged are provided by §§ 545.890–545.920. The trial court did not err in refusing to discharge the defendant because of the provisions of Rule 25.01 and § 545.780. *State v. Barlish,* Mo.App., 421 S.W.2d 558, 559[2], 563[6, 7]."

Accordingly, defendant's reliance upon Rule 25.01 is not justified.

Equally futile is defendant's reliance upon § 545.920. With regard to the latter statute and § 545.900, the supreme court in *State v. Harper,* 473 S.W.2d 419, 424 (Mo. banc 1971) held that "a defendant is not entitled to be released under the statutes in question (assuming the statutory exceptions are not applicable) simply because the required number of terms have elapsed. In addition to that he must show that he has demanded a trial, and that such request was made without success for a reasonable length of time before his right to release has been asserted." The instant record contains no such showing.

As stated in *State v. West,* 484 S.W.2d 191 (Mo.1972), where the rule in *Harper*

was reiterated, "We need not comb through the facts to determine whether the number of terms required by statute elapsed, and whether the failure of the case to be tried at such term was due to accused or the State applying for the delay or whether the delay was caused by want of time to try the case, for the reason that there is nothing in the record to indicate that the accused or his counsel at any time made any demand for a trial, or that he made such request 'without success for a reasonable length of time before his right to release has been asserted,' as required by the Court en Banc in the *Harper* case." *West,* at p. 194.

Defendant's second point has no merit.

■ Defendant's third point is that the trial court erred "in granting the state's motion to consolidate these three cases because the crimes therein charged and the informations thereon filed were prior to the effective date of Rule 24.04. Such change was of a substantive rather than a procedural nature and was ex post facto as to these cases."

Rule 24.04 in its present form became effective on July 1, 1971, which was after the instant informations were filed but prior to the trial. Rule 24.04 authorizes charging, "in the same indictment or information in separate counts, or in the same count when authorized by statute," offenses which are part of the same transaction or which constitute parts of a common scheme or plan. The former version of Rule 24.04 was more narrow in the type of joinder of offenses permitted in one indictment or information.[2]

Rule 24.04 contemplates the joinder of related offenses in the same indictment or information. In the instant case three separate informations were filed. Defendant, however, does not complain about the fact that the three charges were contained in three separate instruments and were not separate counts in the same instrument.

---

**2.** See *State v. Baker,* 524 S.W.2d 122, 126 (Mo. banc 1975) Footnote 3, containing the former and present versions of Rule 24.04. See also *State v. Morgan,* 539 S.W.2d 660, 663–665 (Mo. App.1976) for a review of the "decisional law and the purpose of the 1971 amendment of Rule 24.04."

His complaint is that the three cases should not have been tried together. He argues that the 1971 amendment to Rule 24.04 was a change "of a substantive rather than a procedural nature."

This contention is unsound. Rule 24.04 is procedural and not substantive. *State v. Johnson,* 537 S.W.2d 816, 819[7, 8] (Mo.App. 1976); *Woods v. State,* 546 S.W.2d 14 (Mo. App.1976). "A defendant does not have either a federal or state constitutional right to be tried on only one offense at a time." *State v. Baker,* 524 S.W.2d 122, 126 (Mo. banc 1975). The courts have expressed the sentiment that broad joinder is encouraged in the interest of more efficient administration of criminal justice. *State v. Brannom,* 539 S.W.2d 747, 750 (Mo.App.1976); *State v. Johnson,* 508 S.W.2d 18, 20 (Mo.App.1974). Indeed there is authority to the effect that, at least in certain instances, the Double Jeopardy Clause *requires* joinder of all offenses arising out of "a single criminal act, occurrence, episode or transaction." See *Smith v. State,* 414 U.S. 1031, 94 S.Ct. 460, 38 L.Ed.2d 322 (1973), dissenting opinions of Justices Brennan, Douglas and Marshall.

Rule 24.04 has been held to be constitutional. *State v. Brannom, supra,* 539 S.W.2d at 749, and authorities there cited. *Brannom,* at p. 750[4] also states: "The grant or denial of a severance or separate trials of offenses charged against a defendant is within the discretion of the trial court," citing federal authorities.

It is true that the defendant in the trial court timely voiced his objections to the state's motion to consolidate the three cases. However, a defendant somewhat similarly situated also voiced a timely objection to consolidation but was denied appellate relief. *State v. Walker,* 484 S.W.2d 284 (Mo.1972). There the defendant was charged, by separate counts in the same information, with three separate but related offenses. The trial took place *prior* to the 1971 amendment of Rule 24.04. The court pointed out that the defendant did

not contend that the joinder of the offenses and their simultaneous trial would not have been proper under the amended version of the rule.[3] At p. 286 the court said:

"However, the joinder of distinct felonies . . . does not result in the indictment or information being bad as a matter of law.

.        .        .        .        .

"It must be conceded that the then applicable rule did not authorize the State to try appellant for the three offenses in one trial. But, Rule 24.04 is procedural, and in the event the judgment of the trial court is reversed and the cause remanded, the State would then be authorized to retry appellant in the precise manner in which the first trial was held."

The court then held that the error in *Walker* was harmless and did not constitute ground for reversal. "At most, we find a procedural error without prejudice."

Walker's complaint of improper consolidation was rejected although his case was tried when the former version of Rule 24.04 was in effect. These three cases, tried under the present version, could have been joined in one information and tried at the same time. Since defendant's point is directed to the aspect of simultaneous trials, and not to the aspect of multiple informations, the propriety of the latter need not be examined.

Defendant's third point has no merit.

Defendant's fourth point attacks the action of the trial court in receiving into evidence state's Exhibit O, a written statement of defendant. Defendant says that there are three independent reasons why this was error. The reasons are: (a) Exhibit O was not admissible in Case 6093 (the rape of Miss Raines) and Case 6095 (the murder of Craig) "because the trial of these cases began after *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and the confession is subject to the holding of that case." (b) "As a matter of

---

**3.** In the case at bar defendant does not contend that the present version of Rule 24.04 would not have permitted the joinder of the charges in one information. His attack is on the validity rather than the applicability of Rule 24.04.

law Exhibit O was involuntarily given." (c) Exhibit O "was the fruit of an arrest made without probable cause."

"*Miranda* does not apply to any retrial of a defendant whose first trial commenced prior to June 13, 1966." *Jenkins v. Delaware,* 395 U.S. 213, 222, 89 S.Ct. 1677, 1682, 23 L.Ed.2d 253, 261 (1969). On August 2, 1963, defendant entered a plea of guilty in Case 6093 and in Case 6095. In 1969, in a successful Rule 27.26 proceeding, those pleas and the convictions based thereon were set aside. In June 1974 defendant was tried and convicted in all three cases.

■ The doctrine of *Jenkins* applies even though the pre-*Miranda* convictions in Case 6093 and Case 6095 resulted from guilty pleas rather than a trial. *United States ex rel. Banks v. Henderson,* 514 F.2d 1000, 1001[2] (2d Cir. 1975). See also *United States v. Kienlen,* 415 F.2d 557, 559 (10th Cir. 1969). In *Henderson,* as here, the guilty plea, entered pre-*Miranda,* was set aside and the trial took place post-*Miranda.*

In *Henderson* the court stated that there was no basis for distinguishing between a pre-*Miranda* conviction resulting from a guilty plea and one resulting from a trial. At p. 1001 the court said:

"The rationale of *Jenkins* was that law enforcement officials who had in good faith relied on then-admissible incriminating confessions to establish their case should not be required, many years after the event, to seek alternative evidence because the confession would be inadmissible under *Miranda's* prophylactic rule. 395 U.S. at 220–21, 89 S.Ct. 1677. This policy was equally applicable whether the original proceeding was a trial or a guilty plea."

It follows that reason (a) is unsound.

■ In *State v. Williams,* 369 S.W.2d 408 (Mo. banc 1963), the case involving the murder of Miss Raines, the supreme court set forth at length the evidence concerning the circumstances surrounding the giving of the confession, which is Exhibit O here. The evidence in the instant record is substantial-

ly the same as that set forth in the 1963 opinion and no useful purpose would be served by restating it. The supreme court concluded at p. 419 that "there was clearly an issue of fact as to whether the oral and the written confessions were voluntary or whether they were involuntary and obtained by mental coercion by reason of lack of rest, sleep, food and continuous questioning. The issue was for the jury and the court did not err in overruling the particular objections."

The 1963 ruling effectively disposes of reason (b), at least insofar as Case 6094 is concerned. "It is not necessary to notice these matters further because they have been considered and ruled previously." *State v. Tettamble,* 450 S.W.2d 191, 192[1] (Mo.1970). With regard to the companion cases, 6093 and 6095, whether or not it was necessary, this court has reviewed the evidence, which is common to the three cases, concerning the giving of Exhibit O, and has reached the same conclusion, that is, that it cannot properly be said that, as a matter of law, Exhibit O was involuntarily given. Reason (b) has no merit.

■ A sufficient answer to reason (c) is that it is based on the invalid assumption that the arrest of defendant was made without probable cause. "As the officers had knowledge that felonies had been committed, whether the arrest was constitutionally valid depends in turn on whether the officials, at the moment of arrest, had knowledge of facts and circumstances based on reasonably trustworthy information which would justify a prudent person in believing that defendant had committed the offenses. . . . The factual issue of probable cause must be resolved from facts and circumstances peculiar to each particular case, bearing ever in mind the caveat that probable cause can never be satisfied with a bare suspicion of guilt." *State v. Howell,* 543 S.W.2d 836, 838[2] (Mo.App. 1976).

Here, prior to the arrest of defendant, the officers[4] were in possession of the fol-

---

4. "The knowledge of one officer participating in an investigation is the knowledge of all participating officers." *United States v. Heisman,* 503 F.2d 1284, 1290 (8th Cir. 1974). See also *State v. Pruitt,* 479 S.W.2d 785, 788 (Mo. banc 1972).

lowing information: Miss Raines and Mr. Craig had last been seen alive on the evening of Friday, December 22, 1961; the bodies of both victims were discovered on Saturday morning, December 23; physical evidence obtained at the scene included a portion of a shotgun stock, a spent shotgun shell, and some car keys; the shotgun stock belonged to a neighbor of defendant who had told an officer that defendant had stolen it; defendant had been seen walking near the scene of the crime on Friday evening; the defendant had previously been convicted of a felonious assault upon a woman and his parole had been revoked for attempting to stop an automobile in which a woman was riding.

In view of the foregoing evidence it may not properly be said that defendant's arrest was made without probable cause.

Defendant's fifth point is that the trial court erred in allowing testimony of state's witness Farris "pertaining to certain boots" for these reasons: (a) The boots were not introduced in evidence. (b) The boots were the fruit of an illegal arrest of defendant, the arrest being without probable cause. (c) The boots were the fruit of an illegal search.

Defendant's brief contains no citation of authority in support of point 5 and is thus violative of Rule 84.04(d). Authority exists to the effect that the failure to supply a citation of authority is an abandonment of the point. *State v. Halliburton*, 531 S.W.2d 554, 556[5] (Mo.App.1975); *State v. Schulten*, 529 S.W.2d 432, 434[6] (Mo.App.1975).

■ Reason (a) need not be considered because no authority is cited in its support and it is not discussed in the argument portion of the brief.

Reason (b) is based upon the invalid assumption that the arrest of defendant was without probable cause, a defect which is common to defendant's reason (c) under his fourth point. The reasons underlying the rejection of reason (c) there are fatal to reason (b) here.

■ Reason (c) is invalid because the boots were not found as the result of a search. They were in plain view of the arresting officers when the defendant was arrested in his home. "The mere observation of what is in plain view does not constitute a search. *Harris v. United States*, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968)." *State v. Collett*, 542 S.W.2d 783, 786[5] (Mo. banc 1976).

■ Defendant's sixth point is that the trial court erred in receiving into evidence state's Exhibit Q, the barrel of a shotgun. Defendant concedes that this point was not contained in his motion for new trial but seeks appellate review of it under the "plain error" Rule 27.20(c).

However, this court's review of the record fails to disclose "that manifest injustice or miscarriage of justice has resulted" by reason of the admission of Exhibit Q. Thus Rule 27.20(c) will not be invoked. Additionally the only objection made on appeal to the admissibility of Exhibit Q is that it was obtained as a result of a confession "illegally obtained" from defendant. As that portion of this opinion dealing with defendant's fourth contention discloses, defendant's assertion that the confession was "illegally obtained" is not valid.

Defendant's sixth point has no merit.

■ Defendant's seventh point is that the trial court erred in admitting into evidence, on behalf of the state, the testimony of Phillip J. Aquino, M.D. The attacked testimony was a part of the transcript of the 1962 trial of Case No. 6094. The evidence should not have been admitted, says defendant, because: (a) proof of the unavailability of Dr. Aquino was based on hearsay, and (b) the trial judge himself made inquiry into the unavailability of the witness.

It must be emphasized that defendant's seventh point makes no attack upon the

*contents* of the testimony of Dr. Aquino. His attack is upon the *sufficiency* of the proof of Dr. Aquino's unavailability and upon the manner in which that proof, if such it was, was obtained.

In *State v. Phillips*, 511 S.W.2d 841, 846[15] (Mo.1974) the court discussed the confrontation clause of the Sixth Amendment to the Constitution of the United States, that clause being applicable to criminal proceedings in the state courts by reason of the due process clause of the Fourteenth Amendment. The court pointed out that the *same right* [confrontation] is protected by the Constitution of Missouri in Art. I, Sec. 18(a). The foregoing provisions of both constitutions are invoked by defendant here in support of his seventh point.

The court, in *Phillips*, at p. 846 said:

"As stated in *Barber v. Page* [390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968)] 'It is true that there has traditionally been an exception to the confrontation requirement where a witness is unavailable and has given testimony at previous judicial proceedings against the same defendant which was subject to cross-examination by that defendant. * * * This exception has been explained as arising from necessity and justified on the ground that the right of cross-examination initially afforded provides substantial compliance with the purpose behind the confrontation requirement.'

"Missouri has long adhered to the general rule and also to the above stated exception. *State v. Jackson*, 495 S.W.2d 80 (Mo.App. 1973). In *State v. Barnes*, 204 S.W. 264, 267 (Mo.1918), the court stated the exception: ' * * * the sole prerequisites to its [the transcript] admission being, in the absence of any question as to its correctness: (1) A showing that the witness is then dead [or unavailable]; (2) the presence at the time of the taking of the testimony of the de-

fendant; and (3) his right to cross-examine the witness.' "

It must be noted that defendant here makes no claim that either element 2 or element 3, as stated in *Barnes*, supra, is lacking. His contention is that element 1 is lacking, that is, that the state failed to make a showing that Aquino was, at the time of the instant trial, unavailable.

The "Statement of Facts" portion of defendant's brief contains no mention of Dr. Aquino nor does it contain any citation to any portion of the transcript concerning his testimony or the circumstances leading up to its introduction. The argument portion of the brief contains only scattered references thereto.

This court has examined the voluminous transcript and from it extracted the following information:

The name of Dr. Aquino has been endorsed on the reverse side of each information, together with the names of other state's witnesses. The trial commenced on June 14, 1974. In a pre-trial proceeding on June 13, with all counsel present, the prosecutor[5] informed the court that Dr. Aquino was not going to be able to testify at the trial; that a subpoena had been issued for Dr. Aquino;[6] and that Dr. Aquino had undergone very serious surgery which had prevented the taking of his deposition, which the defendant had wanted to do. The prosecutor also presented to the court an affidavit from Dr. Aquino, dated February 27, 1974, a letter from Dr. Aquino's attending physician dated February 26, 1974, and a letter from defense counsel dated May 17, 1974, all dealing with Dr. Aquino's physical condition. The court stated at that time that those documents *"in and of themselves"* did not show that Dr. Aquino would not be available for the trial starting the next day.

---

5. "It is customary in federal courts to accept statements of . . . counsel as to unavailability of witnesses as a predicate to the use of a deposition." *Castilleja v. Southern Pacific Company*, 445 F.2d 183, 186 (5th Cir. 1971).

6. This court, pursuant to Rule 81.12(c) directed the clerk of the trial court to send up the

original subpoena. The sheriff's return thereon shows that witness Aquino was personally served with the subpoena by the sheriff in Pemiscot County on May 30, 1974. The subpoena commanded him to appear at the trial on June 14, 1974.

On the day of the trial, prior to the selection of a jury, the prosecutor informed the court that he had located Dr. Aquino in Baptist Hospital in Memphis, Tennessee. At the prosecutor's request, and in the presence of counsel for the state and for defendant, the trial judge telephoned Area Code 901 522–7110, the listed telephone number of the hospital. The record shows that defendant's counsel was offered but declined an opportunity to listen, by use of a telephone extension, to the conversation. The judge dictated into the record the following summary of the conversation:

"I asked the woman who she was and she identified herself as being a Mrs. Mary A. White, who has the title of Admissions Clerk at the Baptist Memorial Hospital. I inquired of her whether or not they had as a patient Phillip J. Aquino and after spelling his name to her she left the line for a few moments and returned reporting that their records as kept in a computer indicated that in Room 1402 Madison East they had a patient by the name of Phillip J. Aquino, whose address was 104 West 11th Street, Caruthersville, Missouri; that he was admitted as a patient on June 9, 1974, and that their records indicate his age to be sixty-six. I thereafter asked that she call that particular floor of the hospital to determine whether or not Dr. Aquino was physically in the hospital at this time. She put me on the hold button and thereafter after some period of time she returned to the phone and advised me that she had checked and that Dr. Aquino was in the hospital today and that their records did not indicate that the doctor was ordering him released today, that there had been no check out plans for today. That was the end of the telephone conversation."

The court ruled that the element of the unavailability of Dr. Aquino had been established and permitted the state to introduce his prior testimony.

Defendant, in support of his seventh point, relies primarily upon *State v. Brookins,* 478 S.W.2d 372 (Mo.1972) and *State v. Jackson,* 495 S.W.2d 80 (Mo.App.1973). Each of those cases is distinguishable from the situation here.

In *Brookins* the court was dealing with the admissibility of a deposition of a witness who was in Texas. The deposition was offered by the state. The state made no attempt to secure the attendance of the witness under the Uniform Law to Secure the Attendance of Witnesses from Within or Without a State in Criminal Proceedings. (Missouri: V.A.M.S. § 491.400–491.450; Texas: Vernon's Ann.Tex.C.C.P. art. 24.28). The court cited *Barber v. Page,* 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968), which discussed the exception to the Confrontation Clause of the Sixth Amendment where a witness is unavailable and has given testimony at previous judicial proceedings against the same defendant which was subject to cross-examination by that defendant.

In *Brookins,* at p. 374, the court quoted the following language from *Barber*:

"In short, a witness is not 'unavailable' for purposes of the foregoing exception to the confrontation requirement unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial. The State made no such effort here, and, so far as this record reveals, the sole reason why Woods was not present to testify in person was because the State did not attempt to seek his presence. The right of confrontation may not be dispensed with so lightly."

Thus, in *Brookins,* there was no showing of the physical incapacity of the missing witness to appear at the trial and the state had made no attempt to secure her attendance under the Uniform Law cited.

In *Jackson* the court held inadmissible a deposition which was taken without defendant being present in person and apparently without his knowledge or consent. The court in *Jackson,* at p. 84, said that "in most situations adequate satisfaction of both the right of confrontation and of cross examination cannot be accomplished by either the defendant or his counsel *alone.* Counsel could 'confront' a witness endlessly without accomplishing the constitutional objective and the defendant would rarely be capable

of any effective cross examination. *Both defendant and counsel are necessary to turn the spotlight of truth and moral suasion on a witness whose testimony may mean the difference between life and death, freedom or confinement, innocence or guilt."*

On the same page the court discussed situations where testimony was taken in the presence of defendant or of defendant's counsel but not in the presence of both. The latter, however, is the situation here, so far as the *contents* of Dr. Aquino's testimony are concerned.

It is important to note that the defendant does *not* make either of the following complaints: (1) That the contents of the telephone conversation were not accurately summarized by the court. Significantly his brief states, "Defendant does not question the veracity of the court in relating the telephone conversation." (2) That the contents of the telephone conversation (assuming they were properly considered by the court) fall short of meaning that the physical condition of Dr. Aquino was such that he could not attend the trial.

Apparently only rarely have the courts had occasion to scrutinize, from the constitutional standpoint, the sufficiency of the showing of the unavailability of a witness as a predicate to the admissibility of evidence of his testimony in a prior proceeding. The United States Court of Appeals for the Eighth Circuit has ruled that in making the factual determination of the question of admissibility, the state need not meet the requirements of the Confrontation Clause, but that the question is governed by "the broader standards of the Due Process Clause." *Howard v. Sigler*, 454 F.2d 115 (8th Cir. 1972).[7]

In *Howard* the defendant was convicted of robbery in state court but that conviction was reversed. At the second trial the state trial court permitted the introduction into evidence of a transcript of one of the state's prior witnesses. The only foundation laid was the presentation of an affidavit[8] signed by a medical officer to the effect that the witness was physically unable to attend the trial.

The Supreme Court of Nebraska affirmed the conviction, *State v. Howard*, 184 Neb. 461, 168 N.W.2d 370 (1969), holding that it was within the discretion of the trial court to determine whether the unavailability of the witness had been proved. The Nebraska court said: *"The issue as to the availability of the witness was collateral and did not relate to the general issue of the guilt or innocence of the defendant. Although affidavits may not ordinarily be used as primary evidence against the defendant, they may be used in connection with preliminary, collateral, and interlocutory matters."* (Emphasis added)

The U. S. District Court, in a habeas corpus proceeding, disagreed with the Supreme Court of Nebraska and entered an order directing defendant's release unless Nebraska granted him a new trial. *Howard v. Sigler*, 325 F.Supp. 272 (1971).

The district court's judgment was reversed by the Eighth Circuit in 454 F.2d 115, supra. The latter tribunal pointed out that the question of admissibility is one to be determined by the trial judge and not by the jury; that the trial judge has considerable discretion in making "these preliminary factual determinations" and will be reversed only for manifest error; that the Confrontation Clause does not require, in every case, that witnesses be produced in person to present evidence on the question of admissibility; that the Confrontation Clause itself does not require "that all hearsay be excluded from a criminal trial"; that it was not necessary to produce the affiant to give personal testimony as to the unavailability of the witness by reason of illness and that the affidavit itself was sufficient to show that unavailability.

7. Cert. den. 409 U.S. 854, 93 S.Ct. 188, 34 L.Ed.2d 98 (1972).

8. "At a trial, the adverse party has a right to be confronted by the witnesses against him, if possible, and is entitled to the general protection of the rule excluding hearsay evidence; consequently, affidavits are not, as a rule, admissible in the trial as independent evidence to establish facts material to the issues being tried." 3 Am.Jur.2d Affidavits § 29, p. 404.

The Eighth Circuit also said, p. 120, that the affidavit *"did not relate in any fashion to the guilt or innocence of the accused and it can hardly be characterized as testimony against the accused. It related only to the physical condition of the witness.* There is not the slightest suggestion in the record that the facts are anything other than what is stated in the affidavit." (Emphasis added)

The court also held that there was no denial of due process of law. "The fact of trustworthiness of such affidavit can be readily acknowledged in most cases and in those cases where doubt exists further inquiry could be made. There should be an area of discretion left to the trial judge in matters of this type for the protection of all the parties and for the protection of witnesses and public funds." At p. 121 the court said:

"Undoubtedly the right of confrontation guaranteed by the Sixth Amendment is fundamental to a fair trial and this right has been zealously guarded throughout our history by the courts. In considering that right we should respect its boundaries. The basic purpose is to afford the defendant the right to confront his accusers and cross-examine them on the issues relating to his innocence or guilt and should not extend to collateral issues unless the collateral issues present a question of due process."

The court concluded that no federal constitutional infirmity existed in the ruling of the Nebraska Supreme Court.

The attitude of the Eighth Circuit is consistent with the new Federal Rules of Evidence.[9]

It is true that in *Howard* the affidavit, although hearsay itself, was sworn to and the Eighth Circuit specifically mentioned that fact in holding there was no denial of

due process. Neither party to the telephone conversation here, the judge and the admissions clerk,[10] was under oath while that conversation was taking place or while the judge summarized its contents. But the telephone conversation was not the sole basis for the trial court's ruling. He also had the benefit of the prosecutor's statements, an affidavit, and two letters, even though the latter documents "in and of themselves" were not regarded by the trial court as sufficient. Defendant concedes that he is not questioning the veracity of the trial judge and his counsel was offered the opportunity to listen to the telephone conversation. Under all these circumstances this court holds that there was no denial of due process and that the trial court did not abuse his discretion in determining that witness Aquino was in fact unavailable. The information as to the unavailability of Dr. Aquino which was in the possession of the court when he made his ruling, appears no less reliable, from the pragmatic standpoint, than the information available to the trial court in *Howard.*

Although the participation by the judge in the telephone conversation might have been irregular, it was done in good faith, at the request of the prosecutor, in the presence of counsel for both sides, and for a limited and bona fide purpose in connection with a "preliminary, collateral, and interlocutory matter."

This court holds that defendant's seventh point has no merit. Even if the holding were otherwise, it would probably not be necessary, at this juncture, to grant a new trial. The case could be remanded for a limited hearing by the trial court to receive evidence on the factual question of the unavailability of Dr. Aquino on June 14, 1974. Defendant would be entitled to a new trial only if the court found that he was then in

---

9. Federal Rules of Evidence are contained in 28 U.S.C.A. See Rule 104(a), Rule 1101(b) and Rule 1101(d)(1).

10. "As *evidence* of the witness's [unavailability], *replies received* during the search ought to be admissible; whether or not they are testimony in themselves, they serve as circumstances indicating due diligence of the party in seeking

the witness . . . . This is one of the spots in the law where the inflexible technical application of the hearsay rule most often defies common sense." 5 Wigmore, Evidence § 1414 (Chad.Rev.1974), p. 238. The first sentence is quoted with approval in *Cacioppo v. K. C. Pub. Serv. Co.,* 234 S.W.2d 799, 800 (Mo.App.1950).

fact available. Such procedure has been utilized where a question arose as to the voluntariness of a confession, *State v. Bridges*, 491 S.W.2d 543, 545[2] (Mo.1973); *State v. Monteer*, 467 S.W.2d 48, 51–2[1] (Mo. banc 1971); *State v. Glenn*, 429 S.W.2d 225, 237[29, 30] (Mo. banc 1968), and whether the Habitual Criminal Act applies, *State v. Dixon*, 434 S.W.2d 564, 566[2] (Mo.1968); *State v. Holmes*, 434 S.W.2d 555, 559[6, 7] (Mo.1968); *State v. Garrett*, 416 S.W.2d 116, 120[7–9] (Mo.1967).

Defendant's eighth point is that the trial court erred in failing to grant defendant's motion for acquittal "at the close of the state's evidence" because of an alleged factual deficiency. This court has examined the transcript and there is no such deficiency. Moreover, at the close of the state's case, the defendant offered evidence and, in so doing, he waived any claim of error as to his motion of acquittal filed at the close of the state's case. *State v. Benfield*, 522 S.W.2d 830, 831[1] (Mo.App. 1975). Defendant's eighth point has no merit.

Defendant's ninth point is that the trial court erred in admitting state's Exhibits M and N. Defendant's brief contains no citation of authority in support of this point and thus violates Rule 84.04(d). See additional authorities cited in the discussion of defendant's fifth point. A gratuitous review of the defendant's ninth point discloses that it is in fact without merit. A discussion of its particulars would serve no precedential purpose.

Defendant's tenth point alleges error on the part of the trial court in admitting into evidence photographs (Exhibits G, H, I, and K) of the two victims. His point states no reason why the exhibits should not have been admitted. This court has examined the exhibits and although they are gruesome, they have probative value and the court did not abuse its discretion in admitting them. *State v. Jones*, 515 S.W.2d 504, 506[7] (Mo.1974). Defendant's tenth point has no merit.

Defendant's eleventh point is that the trial court erred in not granting a mistrial by reason of a portion of the closing argument of counsel for the state. His point fails to state what portion of the closing argument was allegedly erroneous or why it was erroneous. His statement of facts makes no mention of the incident. A gratuitous reading of the argument portion of the brief shows that his complaint is a scattered one directed to several portions of the argument. This court has reviewed each of these portions and finds no error on the part of the trial court in refusing to grant the drastic remedy of a mistrial. *State v. Wright*, 515 S.W.2d 421, 432[8] (Mo. banc 1974); *State v. Robinson*, 516 S.W.2d 40, 44[4] (Mo.App.1974); *State v. Phelps*, 478 S.W.2d 304, 307–8[8] (Mo.1972). Defendant's eleventh point has no merit.

Defendant's twelfth point is: "The court erred in giving instruction No. 7." Similar attacks, similarly stated, are made in point 13 (instruction No. 11) and point 14 (instruction No. 15). None of these three points preserves anything for review for the reason that they fail to state "wherein and why" the giving of the instruction is claimed to be erroneous, Rule 84.04(d). This court has gratuitously examined each of the challenged instructions in light of the attacks made upon them in the argument portion of defendant's brief. None of the instructions is subject to any of the imperfections assigned and each is factually supported.

This court expresses its gratitude to Hon. Fielding Potashnick and Hon. Joe Perry Rice III, who represented the defendant on this appeal and did so without compensation.

There is no error in the matters reviewed pursuant to Rule 28.02.

The judgments in all three cases, No. 6093, No. 6094, and No. 6095, are affirmed.[11]

11. On July 1, 1976, pursuant to an order of this court, the trial court vacated the sentences previously imposed, granted allocution, and imposed the instant sentences, exercising its judicial discretion to impose consecutive rather than concurrent sentences. The resentencing was prompted by *State v. Baker*, 524 S.W.2d 122, 126–131[5–7] (Mo. banc 1975).

HOGAN, J., concurs.

BILLINGS, C. J., disqualified.