STATE of Missouri, Respondent,

v.

Ray T. BLACKWELL, Appellant.

No. 54701.

Supreme Court of Missouri,
En Banc.

Nov. 9, 1970.

John C. Danforth, Atty. Gen., Dale L. Rollings, Asst. Atty. Gen., Jefferson City, for respondent.

John J. Cosgrove, Legal Aid and Defender Society of Greater Kansas City, Kansas City, for appellant.

FINCH, Judge.

Defendant, after being found guilty by a jury of statutory rape of a twelve-year-old girl, was sentenced by the court under the Second Offender Act (§ 556.280, V.A.M.S.) to imprisonment for ten years, with credit being given for jail time. This is an appeal therefrom. We affirm.

The points raised on appeal do not include an attack on the sufficiency of the evidence. Hence, facts are recited only to the extent necessary to a resolution of the issues briefed.

Diane Page testified that on March 9, 1968, while she was enroute to the store, defendant made her enter his car and he then took her to his apartment (No. 11) in a building at 1211 Michigan in Kansas City. She was there several hours during which defendant had intercourse with her three times. At about 10.30 p. m., defendant placed Diane in the hallway of the apartment building. He then knocked on the door of another apartment to attract attention, and then ran. The occupant of the apartment and the apartment manager talked to Diane, after which the police were called. They took Diane to General Hospital for an examination.

The first point asserted on appeal is that defendant was denied the effective assistance of counsel in violation of his rights under the Sixth and Fourteenth Amendments to the Constitution of the United States. We held in State v. Cluck, Mo., 451 S.W.2d 103, 107, that when a defendant believes that "he was deprived of effective assistance of counsel at trial, he may file a motion to vacate sentence under S.Ct. Rule 27.26, V.A.M.R. An evidentiary hearing may then be held and a full disclosure of all the facts may be had." We declined in that case to review the question as a part of the direct appeal. This conclusion was reached because alleged ineffective assistance of counsel is an issue which usually arises after the conclusion of the trial and as a result there has been no testimony offered on that spe-cific issue, the facts pertinent thereto are not fully developed, and we do not have the benefit of findings, conclusions and a ruling thereon by the trial court.

■ The situation here is somewhat different than the usual case in which ineffective assistance of counsel is claimed. This arises from the fact that defendant refused at the trial to permit appointed counsel to conduct his defense and insisted instead on trying the case on his own behalf. The trial court sought to have defendant permit appointed counsel to try the case and, when defendant refused, had counsel remain at the counsel table so as to be available for any assistance which defendant might desire or be willing to accept. The record discloses that participation by counsel was very limited because that was what defendant insisted upon. Nevertheless, newly appointed counsel on appeal insists that defendant was denied his constitutional right to effective assistance of counsel, with the asserted result that the trial was so unfair as to deprive defendant of due process of law.

We conclude that even in this unusual situation, the procedure specified in State v. Cluck should be followed. An evidentiary 27.26 hearing will give defendant an opportunity to testify as to any alleged ineffective assistance of counsel and will give appointed counsel an opportunity to give his version of what occurred. In addition, both defendant and the State will have the opportunity to offer any other pertinent evidence. We then will have before us the record on this direct appeal plus the testimony taken at the 27.26 hearing. On the basis thereof, we can review the findings and conclusions of the trial court in accordance with Rule 27.26(j). Accordingly, we decline, on the record before us, to review the issue of alleged denial of effective assistance of counsel.

■ Defendant's second point involves the admission of testimony of two police detectives as to things observed in defendant's apartment on the night of the

occurrence. It is defendant's contention that his motion to suppress this evidence should have been sustained.

The testimony disclosed that sometime after the police had taken Diane from 1211 Michigan to General Hospital for examination, some uniformed officers came to the apartment building looking for defendant, but he was not there. After those officers had left, defendant returned to the building and was told by Mrs. Darden, the building manager, that the police were looking for him. Defendant then called the police from Mrs. Darden's apartment, after which he, accompanied by his girl friend, Helen Dyer, left for the police station. Later, Miss Dyer returned to the building with two detectives (Grosko and Pruitt) and Diane Page and her mother. Miss Dyer unlocked the door and admitted all of them to Apartment 11.[1]

Before entering the apartment, the detectives asked Diane to tell them what she had observed in the apartment. She told of magazines of nude women, a box of cheese sticks, and a large bottle of root beer. Upon entering the apartment, the officers observed these three things. At the trial, Diane testified as to the presence of these items in the apartment, and detectives Grosko and Pruitt told of seeing them when they had entered the apartment with Diane. It is this testimony as to what the detectives observed in the apartment which defendant says should have been suppressed and which allegedly was prejudicial to defendant.

Admittedly, the officers had no search warrant for Apartment 11, they were not searching incident to an arrest, and an emergency situation did not exist. Nevertheless, we conclude that there was sufficient basis for the trial court to overrule the motion to suppress and to permit the two detectives to testify as to what they observed in the apartment. The testimony received was sufficient to justify a conclusion that the officers were admitted to the apartment by Helen Dyer and that she had a right to admit them. The landlady testified that there were two keys to the apartment. She had one and the other had been given to defendant Blackwell. The landlady did not unlock the door for the detectives with her key. That was done by Helen Dyer with a key which she had in her possession when she returned with the detectives from the police station after she had accompanied defendant Blackwell to the station. Helen Dyer did not testify, but it is reasonable from the testimony to conclude that the key which she possessed was either defendant Blackwell's key or an additional one which he had obtained and furnished to her. Mrs. Darden testified that it was Blackwell's key. Nothing in the record indicates or suggests that Miss Dyer obtained the key unlawfully. Furthermore, the record indicates that Helen Dyer, although not a tenant so far as Mrs. Darden was concerned, was seen at the apartment from time to time and was observed using the bathroom facilities in the building. According to detective Grosko, when she gave the officers a statement, she listed 1211 Michigan, Apartment 11, as her address and stated that she lived there with defendant Blackwell.

Defendant did not testify on the motion to suppress or at the trial and, as indicated,

1. Defendant urges that the detectives were admitted to the apartment by the landlady, Mrs. Darden. Although there is some confusion in the testimony, it is well established by the whole record that they were admitted by Helen Dyer, not Mrs. Darden. Earlier, when the two uniformed policemen came to the building looking for defendant, Mrs. Darden found them knocking and kicking on the door of Apartment 11. She told them that defendant already had gone to the police station and she unlocked the door and admitted them to Apartment 11. The officers called headquarters and verified that defendant was enroute to the station, after which they left. They did not testify at the trial, so there was no evidence received which resulted from that entry. Detectives Grosko and Pruitt had no knowledge of this prior entry when they went to the apartment with Helen Dyer.

neither did Helen Dyer. There was no explanation of her absence other than testimony by Mrs. Darden that Helen Dyer had not been seen in a long time.

We conclude that the evidence of residency in the apartment by Helen Dyer, together with her possession of a key to the apartment, was sufficient to establish her right to enter the apartment and to admit Diane, her mother and the detectives. There is nothing in the evidence to indicate that said act was coerced or involuntary. Consequently, the evidence was sufficient to justify the trial court in overruling the motion to suppress. See United States v. Airdo, 7th Cir., 380 F.2d 103; Gurleski v. United States, 5th Cir., 405 F.2d 253; and Wright v. United States, 8th Cir., 389 F.2d 996.

Finally, defendant says that the question of the sentence to be imposed if defendant was found guilty should have been submitted to the jury because the trial court made insufficient findings to justify assessment thereof under § 556.280. Defendant asserts that this necessitates reversal and remand for a new trial.

The State, outside the presence of the jury, offered in evidence records of the Jackson County Circuit Court showing that on May 16, 1961, the defendant, having been convicted of first degree robbery, was sentenced to imprisonment in the penitentiary for five years. In addition, the State offered in evidence a certified copy of a transcript from the Missouri Department of Corrections showing that defendant was received at the penitentiary to serve said sentence on May 26, 1961, and that he was discharged therefrom on December 24, 1964, on commutation of sentence.

Following receipt of this testimony, the court ruled as follows:

"The Court will rule that the State has sufficiently shown the conviction of a prior offense in accordance with the Missouri Statutes, and the exhibit and the record of the clerk will be received in connection with this proceeding, and this cause will proceed under what we call the Habitual Criminal Act or the Second Offender Act."

It is clear that the documents received in evidence were sufficient to prove, as required by § 556.280, that defendant had been convicted previously of an offense punishable by imprisonment in the penitentiary and that he had been sentenced and imprisoned. Defendant makes no contention that the evidence was insufficient to so prove. Instead, defendant's only contention is that the court's findings with respect to that evidence were deficient.

In somewhat comparable situations in the past, we have reversed the judgment of conviction and have remanded the case to the trial court to receive such additional evidence, if any, as may be submitted and then to make specific findings as to whether defendant has been convicted and sentenced for one or more previous felonies and whether subsequently he was imprisoned, fined, paroled or placed on probation thereon. For example, see State v. Garrett, Mo., 416 S.W.2d 116; State v. Holmes, Mo., 434 S.W.2d 555; and State v. Dixon, Mo., 434 S.W.2d 564. If, on remand, the court made the necessary specific findings, it then would resentence defendant. If proof did not establish applicability of § 556.280, a new trial would be granted.

In this case the State asserts that § 556.280 makes no requirement that the trial court recite specific detailed findings in support of the ultimate conclusions that defendant has been convicted previously of a felony and that the Second Offender Act is applicable. It suggests that we should reconsider the practice prescribed in cases such as Holmes and Garrett. This we have concluded to do, because the practice is time consuming and should not be required if not dictated by the terms of § 556.280.

■ Assuming a sufficient allegation in the indictment or information to inform defendant as to any prior conviction with which he is charged pursuant to § 556.280, the important requirement for the protection of a defendant is that the *proof* (the evidence) as to prior convictions sufficiently establish those things required for the Second Offender Statute to be applicable, viz: that defendant was *convicted* of a prior offense punishable by imprisonment in the penitentiary; that he was *sentenced* therefor; and that he was subsequently *placed on probation, paroled, fined or imprisoned therefor.* If these elements of proof are not present, the statute may not be invoked. However, if the necessary proof has been made, it does not follow that the statute requires that the court's findings specifically detail that each of these required elements have been proved, or that defendant is denied rights to which he is entitled if the findings do not so do. It is desirable that the court in its findings detail each of these required items, as that will serve to insure that the required evidence has been offered, but we have concluded that detailed, specific recitals such as we required in Garrett, Holmes and Dixon are not an absolute prerequisite to disposition of the case pursuant to § 556.280. Consequently, where, as here, a hearing as prescribed by the statute has been held and the evidence clearly establishes that defendant has been convicted previously of an offense punishable by imprisonment in the penitentiary, that he was sentenced thereon and subsequently was imprisoned, fined, paroled or placed on probation, and the court's order recites a finding of a previous felony conviction and that under the evidence the Second Offender Act is applicable, we will and do herein hold such order to be a compliance with the statute. Such an order implies specific findings in accordance with the ultimate finding and conclusion stated. The situation is comparable, by analogy, to that in jury-waived criminal trials wherein, pursuant to S.Ct. Rule 26.01(c), V.A.M.R., "All fact issues upon which no specific findings are made shall be deemed found in accordance with the result reached."

Cases such as Garrett, Holmes and Dixon, to the extent inconsistent herewith, are overruled.

Judgment affirmed.

HENLEY, C. J., and DONNELLY, SEILER, MORGAN, and BARDGETT, JJ., concur; HOLMAN, J., concurs in result in separate concurring opinion filed.

## OPINION CONCURRING IN RESULT

HOLMAN, Judge.

I concur in result because I disagree with the principal opinion in one respect. The defendant refused to permit appointed counsel to conduct his defense but the trial court nevertheless required that appointed counsel remain available for assistance. In that situation, instead of holding that the issue of ineffective assistance of counsel should be determined in a later 27.26 proceeding, I would hold in this case that defendant is in no position to complain and would rule the point against him. I fully agree with all of the remainder of the opinion.