**STATE of Missouri, Respondent,**

v.

**William FRANKLIN, Appellant.**

**No. KCD 28442.**

Missouri Court of Appeals,
Kansas City District.

Jan. 31, 1977.

Motion for Rehearing and/or Transfer
Denied Feb. 28, 1977.

"A. No.
"Q. Did you go to employers and apply for work?
"A. Yes, sir."

**850**

Thomas M. Larson, Public Defender, Lee M. Nation, Asst. Public Defender, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, for respondent.

Before WASSERSTROM, P. J., and SOMERVILLE and TURNAGE, JJ.

WASSERSTROM, Presiding Judge.

The jury convicted defendant of stealing a motor vehicle, and based upon defendant being charged under the second offender act, the court fixed his punishment at imprisonment for five years. On this appeal, defendant assigns as error: (1) that the jury, not the judge, should have assessed punishment, because the procedure for applying the second offender act, Section 556.-280 (all statutory references being to RSMo 1969) was not followed; and (2) that the trial court failed to require the State to produce certain photographs requested by defendant under Rule 25.32.

I.

The question as to whether the trial court properly proceeded under the second offender act grows out of the following procedural background. The amended informa-

tion, on which this case was tried, alleged that defendant pleaded guilty on February 23, 1972, to a charge of intent to rob *with malice aforethought*, and that thereafter on February 23, 1972, defendant was sentenced to three years imprisonment and placed on probation for five years. State's Exhibit 1, the record of the prior conviction, showed that the plea of guilty had been made on October 18, 1971, and that the charge to which the plea was entered was that of assault with intent to rob, *without malice*, and that defendant was sentenced on February 23, 1972, to three years imprisonment and a parole for five years. The defendant took the stand in his own behalf and admitted that he had previously been convicted of assault with intent to rob and that he had served time. The trial court received into evidence State's Exhibit 1 and acted throughout the case under the second offender act, but it made no finding as to the application of that statute.

No attack respecting application of the second offender act was included in the motion for new trial, but we nevertheless consider the matter now under Rule 28.02. In this connection, defendant makes two arguments. The first of these is that the proof did not support the allegation of the amended information, but rather that the proof varied in two respects: a) as to the date upon which defendant pleaded guilty; and b) with respect to the conviction being for assault to rob without malice rather than an assault with malice.

■ As to the date of the plea, the error in the information concerned an unimportant detail. The question of concern is only whether the information sufficiently identified the alleged prior conviction so that defendant could prepare his defense, if any, in that respect. The important date for that purpose of identification was the date of conviction, and in this respect the allegation and the proof were in exact accord.

■ As to the variance between the allegation concerning assault with malice and the proof of conviction for assault without

malice, this variation was also immaterial. See *State v. Kirk*, 510 S.W.2d 196, 201 (Mo. App.1974). Neither this variance nor that with respect to the date upon which the plea of guilty was entered could prejudice defendant unless he was misled or in some way handicapped in the preparation of his defense. No such misleading nor handicap could have been true here. This is established beyond question by the fact that defendant admitted on his own testimony that he had been convicted of assault with intent to rob and had served time with respect to that conviction. *State v. Dean*, 400 S.W.2d 413, 416 (Mo.1966.)

As his second reason for claiming that the procedures were not followed which are required for the application of the second offender statute, defendant argues that the trial court failed to make findings of fact as required by § 556.280(2); and he cites in support *State v. Parker*, 458 S.W.2d 241 (Mo.1970); *State v. Tettamble*, 450 S.W.2d 191 (Mo.1970), and *State v. Vermillion*, 446 S.W.2d 788 (Mo.1969). Not cited by defendant, but holding that failure to make findings constitutes reversible error are *State v. Garrett*, 416 S.W.2d 116 (Mo.1967); *State v. Holmes*, 434 S.W.2d 555 (Mo.1968), and *State v. Dixon*, 434 S.W.2d 564 (Mo.1968). Those cases, at least to the extent that they held that the second offender statute could not be applied unless the trial court made specific findings of fact as to the various constituent elements prerequisite to application, have been overruled by *State v. Blackwell*, 459 S.W.2d 268 (Mo.banc 1970) in which it was held that specific findings are not necessary and that it suffices if the record shows the necessary facts and the trial court makes a general finding to the effect that the statute applies. The *Blackwell* opinion further draws an analogy to Rule 26.01(c), thus tending to indicate that even an omitted general finding can be implied if the necessary facts have been proved.

■ Although the trial court in this case did not make any explicit finding, even of a general nature, in favor of the application

852

of the statute, that could be treated as immaterial as a logical extension of *Blackwell*. However, even if that be an overly broad interpretation of *Blackwell*, still the omission of the finding here would not constitute prejudicial error under the particular facts of this case. State's Exhibit 1 taken together with defendant's admissions on the stand prove all of the constituent elements requisite to the application of the second offender act. The actions of the trial court, especially by refraining from instructing the jury concerning sentencing and by assessing the sentence itself, supply an unmistakable basis for implying a finding that the second offender act applies. That implication is further strengthened and made almost explicit by the court's statement at time of allocution that defendant "was tried under the Habitual Criminal Act." If the trial court's oversight and failure to make a specific finding had been called to its attention in the motion for new trial, that oversight could easily and surely would have been corrected at that time— the necessary finding can be made even after rendition of the jury verdict. *State v. Abernathy*, 515 S.W.2d 812 (Mo.App.1974).

Under this record, there is no genuine question of fact for resolution concerning the application of the second offender act. If this case were reversed and remanded for the solitary purpose of securing an explicit finding as to the application of the act, the only result from a practical point of view would be to give defendant a one-day holiday from the penitentiary to accomplish a pure formalism. Insisting upon such meaningless ritual would serve no useful purpose. Everything considered, the missing finding must be considered a harmless omission.

II.

Defendant's second point, having to do with nonproduction by the State of certain photographs, arises in the following factual context. Prosecution witness Burke was in the parking garage from which and at the time when the car in question was stolen, and he identified defendant as the one who was riding in the front passenger seat of the stolen automobile as it was being driven alongside of Burke toward the exit of the garage. Shortly after the date of the theft, Burke was shown a group of "mug shots," out of which he selected a photograph of defendant as the one who was riding in the passenger seat and he also selected two others whom he stated to be somewhat similar in appearance. Two days later the police showed Burke another group of police photographs, out of which he again selected and identified the photograph of defendant.

Defendant filed a motion under Rule 25.-32 to compel production of the various photographs which had been displayed to Burke. The prosecution answered to that demand that it could not make production because the police had retained no record of the photographs which had been displayed to Burke. Notwithstanding the resulting inability of the State to make production of the photographs in question, defendant nevertheless persists in his complaint, taking the position that there was a duty upon the State to make and preserve a record of the photographs so used. He states his position in his brief as follows: "Appellant submits that this Court should not sanction a limitation imposed upon an accused's ability to meet the State's evidence simply because the State has lost, mislaid or failed to keep records of potentially valuable defense evidence."

■ Virtually the identical argument was rejected by the Massachusetts Supreme Court in *Commonwealth v. Gibson*, 357 Mass. 45, 255 N.E.2d 742, 743 (1970), the court holding as follows:

"We agree with the Commonwealth that to require segregation of all photographs shown to witnesses in the investigatory stage of all crimes would be to place a heavy if not intolerable burden upon investigatory processes at a time when these processes are already overtaxed, and we are not disposed to do it. In any event, the jury had before them the complete story of the photographic identifications for such weight as they chose to give it."

To the same effect is *Commonwealth v. Meggs*, 341 N.E.2d 699 (Mass.App.1976). See also *State v. Solem*, 220 Kan. 471, 552 P.2d 951, 956 (1976). Those rulings are persuasive. The police had no duty to preserve a record of all photographs shown to Burke, and in the absence of any way in which to identify those photographs, the State violated no duty of disclosure to defendant.

Affirmed.

All concur.