**STATE of Missouri, Respondent,**

v.

**Daniel L. KENT, Appellant.**

**No. KCD 30336.**

Missouri Court of Appeals,
Western District.

July 8, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 4, 1980.

Application to Transfer Denied
Sept. 9, 1980.

William F. O'Sullivan of Bunch, O'Sullivan, Sandifer & Hill, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Jefferson City, Darrell Panethiere, Asst. Atty. Gen., Kansas City, for respondent.

Before TURNAGE, P. J., and SHANGLER and MANFORD, JJ.

MANFORD, Judge.

This is a direct appeal from a jury conviction for rape. Punishment was assessed by the court at 25 years in the Department of Corrections. The judgment is affirmed.

Four points are presented. Appellant alleges the trial court erred by failing to submit the issue of punishment to the jury upon failure of formal finding of the applicability of the Second Offender Act, and absent such finding the issue of punishment should have been determined by the jury; the trial court committed plain error in response to jury inquiry regarding testimony which by its effect was a supplemental instruction in conflict with MAI–CR 2.01; the trial court erred in overruling appellant's motion to quash the victim's testimony regarding identification of appellant because said identification was impermissibly suggestive; and as his final point, appellant alleges the trial court committed plain error by injecting itself into the trial by the asking of questions or the making of suggestions to questions tending to elicit favoritism for the prosecution and the court directed critical remarks toward defense counsel which reflected the court's attitude that appellant was guilty, thereby depriving appellant of a fair trial.

The sufficiency of the evidence is not challenged, so a summary thereof suffices. The evidence reveals the victim, a fourteen-year-old girl, agreed to babysit for a friend. The friend, mother of two small children, the friend's sister and brother-in-law transported the victim to the mother's apartment and arrived there between 5:30/6:00 p. m. Shortly after their arrival, appellant and a girlfriend arrived at the apartment whereupon appellant attempted to borrow money from the friend's brother-in-law. Appellant was briefly introduced to the victim but the latter was watching TV and engaged in no conversation with appellant.

The mother, her sister and brother-in-law left for a drive-in movie about an hour later, leaving the victim with the two small children. Between 8:15 p. m. and 8:30 p. m., a downstairs neighbor observed appellant returning to the apartment where the victim was babysitting. The details of the rape were testified to by the victim, including the tearing of her clothes and abrasions and bruises on various parts of her body.

The defense was alibi. Appellant called the female physician who completed the pelvic examination of the victim. Appellant also called a police officer who testified that a call had been made to the apartment and the victim disclaimed the presence of any other persons in the apartment besides the minor children and herself. As his final witness, appellant called a friend who testified appellant was at a party in another location the evening of the rape.

The jury found appellant guilty and the court affixed sentence. Timely motion for a new trial was filed and overruled and this appeal followed.

■ Appellant's first argument centers upon the applicability of the Second Offender Act and if inapplicable, claims the jury should have affixed punishment. Appellant contends the court made no formal ruling upon the Second Offender Act, but the record fails to support this contention. The record discloses a pretrial conference where the prosecution was granted leave to file an amended information in lieu of indictment so as to include the Second Offender Act. During this conference, the only attack made was by defense counsel that the prior conviction of appellant (January 13, 1972) was at a time when appellant was sixteen years old. The record reveals, however, a certified copy of the prior offense, including the incarceration of appellant in the Department of Corrections on charges of felonious assault. The record further reveals the court admitted the records of the prior offense into evidence.

From the record, it is found appellant's first argument is totally without merit. Appellant had pled guilty to a previous felony charge, that record was properly made a part of these proceedings and the court, not the jury, could, pursuant to the then applicable statute (§ 556.280, RSMo 1969 [1]), assess punishment upon conviction.

Appellant argues that since the trial court did not make specific findings and hence a "formal" finding of the applicabili-

ty of the Second Offender Act, error was committed upon failing to submit the question of punishment to the jury. This view is no longer valid in our state since the decision in *State v. Blackwell,* 459 S.W.2d 268 (Mo. banc 1970), which provides that if the record denotes necessary and sufficient facts and the trial court makes a general finding, then the Second Offender Act applies. See also *State v. Franklin,* 547 S.W.2d 849 (Mo.App.1977), which holds that even a general finding of applicability may be dispensed with if necessary facts relative to the applicability of the act are shown or proven. It is the rule under *State v. Franklin, supra,* that applies to the instant case. The record reveals necessary facts showing the conviction for a prior felony, the incarceration of appellant and the admission of that evidence on the record.

Point I is ruled against appellant.

Turning to appellant's second alleged error, it is claimed the trial court committed plain error by the court's response to the jury during the jury's deliberation. Matters of manifest injustice and miscarriages of justice are reviewable as plain error by this court, see Rule 29.12 (formerly Rule 27.20[c]). Appellant contends the court's response was tantamount to a supplemental instruction to MAI–CR 2.01 relating to the credibility of testimony of one of the state's witnesses.

■ As appellant argues, a trial court is prohibited from *giving to a jury supplemental instructions or in any way communicating any message which in fact or by result overemphasizes any one aspect of the law in the case,* see *State v. Amos,* 553 S.W.2d 700 (Mo. banc 1977).

■ Shortly after retiring for its deliberation, the jury asked the court the following question:

"Can the physical evidence, i. e., the green socks, be shown to the witnesses during preliminary interviews and deposi-

---

1. Pursuant to Criminal Code revision, refer to § 558.011 and § 558.016, effective January 1, 1979.

tions before and outside of the actual court proceedings? *Example* : State, before trial go over evidence with witness."

Upon receipt of the foregoing communication, the court gathered counsel for the defense and the prosecution to discuss the inquiry. The response set forth below was approved on the record by both attorneys. Appellant's counsel stated on the record, "That's a fine answer". Counsel for the state responded, "Sounds great". The court's answer was as follows, "I am not sure I understand the question, but it seems to be in a general area about which you should not be concerned. Continue your deliberations." [2]

The state appears to argue that since appellant did not object to the court's response but in fact agreed to it, coupled with appellant's failure to preserve the point in his motion for new trial, this court should not review the matter. Plain error is alleged and by virtue thereof, this court takes up the entirety of the contention.

In the first instance, the mere reading of the exchanged communication does not lend support to appellant's argument. Inherently, the exchanged communication does not even suggest, let alone establish, any comment upon the credibility of any witness and most certainly does not, by its very nature, rise to any form of supplemental instruction to MAI–CR 2.01.

There is nothing within the record of this case to establish or suggest the pretrial preparation of any witness by the prosecution. The appellant, in his brief, tacitly admits this when he declares, "in this case there was no evidence that the witness had or had not been coached . . ."

Appellant contends the instant case falls within the rule of *State v. Amos, supra; Houston v. Northup*, 460 S.W.2d 572 (Mo. banc 1970) and *Teaney v. City of St. Joseph*, 548 S.W.2d 254 (Mo.App.1977). As was pointed out above, *State v. Amos, supra*, involved a case where the trial court is prohibited from overemphasizing one aspect

of the law. That case involved the giving of a supplemental instruction (on second degree murder) over objection, when the jury expressed difficulty in deriving a verdict upon the charge of first degree murder. The supplemental instruction was upon an otherwise unmentioned offense and such act by the trial court was held to be reversible error. *Houston v. Northup, supra,* finds no application to the instant case because in that case, the trial court, on its own motion and not at the request or upon the approval of either party, gave to the jury an improper clarifying instruction which emphasized that where two theories of recovery were possible, but failed to include reference to existing defenses, such clarifying instruction was prejudicially erroneous. In *Teaney v. City of St. Joseph, supra*, the court sent to the jury after deliberations had commenced a qualifying instruction which included a superfluous reference to one instruction, therefore "interjected a new note on aspect as to which the jury had made no inquiry."

By the very reading of the exchanged communication, it becomes clear no prejudice resulted therefrom. There was no plain error and Point II is ruled against appellant.

■■■■ By way of appellant's third alleged error, he argues that his identification by the victim was impermissibly suggestive. Identification which is unnecessarily suggestive is not permitted, see *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), but the fact of pretrial identification based upon unnecessary suggestion does not invalidate an in-court identification where there is sufficient basis for such in-court identification, see *State v. Nauman*, 592 S.W.2d 258 (Mo.App.1979); *State v. Boothe*, 485 S.W.2d 11 (Mo. banc 1972) and *State v. Parker*, 458 S.W.2d 241 (Mo. 1970). In addition, undue suggestion in pretrial identification must consider the "totality of circumstances" surrounding po-

---

**2.** This exchange of communication was entered as Court's Exhibit Nos. 1 and 2 upon the record.

lice and investigatory procedures, see *State v. Arnold*, 528 S.W.2d 164 (Mo.App.1975).

Appellant's argument is two-pronged, with one tangent being the fact that he was denied the right to counsel at the time of identification and the second, that a "one-on-one identification" was so suggestive that his right to a fair trial was irreparably harmed.

■ As to the first point of his two-part argument, the rule is clear that the presence of counsel at a police lineup or identification attaches only to post-indictment proceedings, see *Morris v. State*, 532 S.W.2d 455 (Mo. banc 1976). The record is unquestionably clear that appellant was afforded his *Miranda* warnings and, in fact, signed a waiver relative to the *Miranda* warnings. This particular question was laid to rest upon a pretrial stipulation which included the *Miranda* waiver. There is no merit to appellant's contention.

As to appellant's additional argument that the one-on-one identification was impermissibly suggestive so as to invalidate the in-court identification, the following facts quickly dispel the merit of such an argument.

After the rape, the victim was removed to a local hospital and while discussing the incident with an investigating officer, gave the officer a physical description of appellant. It should be remembered that the victim had been introduced to appellant in the early evening hours of the night of the rape. The victim knew appellant's first name was Danny. The victim provided this information to the officer only a short time after the rape.

At 10:30 a. m., the morning following the rape, the victim appeared at local police headquarters. The victim was handed a book containing numerous color photographs of males who had been picked up at one time or another on sex offenses. The victim, independently and without prompting from anyone, selected appellant's photo from the numerous others in the book.

Following the independent selection of appellant's photo, the victim was asked to accompany a police officer to a small room containing a one-way mirror. The victim was asked to observe the male occupant in the next room. The victim identified the male occupant as the man who raped her.

Appellant contends that such a procedure was overly suggestive and hence invalidated the in-court identification of himself. Attempts by law enforcement officials were made to find other white males comparable in size and appearance to form a lineup. This became impossible because no one could be located who possessed the physical build of appellant and similar shoulder-length and facial hair.

■ As has been mentioned, the question of improper suggestive identification must consider the "totality of circumstances", *State v. Arnold, supra*. Under our own law, it can be stated that undue suggestive identifications involve the following factors:

> "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *State v. Carter*, 571 S.W.2d 779, 782 (Mo.App. 1978), citing *State v. Hamblin*, 448 S.W.2d 603 (Mo.1970).

■ As applied to the facts in the instant case, the above factors relate thusly: the victim obviously had the opportunity to view appellant at the time of the rape; the victim throughout the pretrial investigation and upon trial displayed an absolute degree of attention to the matter at hand; the evidence shows the victim gave an accurate description of the appellant inclusive of his first name; the victim, at the time she selected appellant's photo and then in observing him through the one-way mirror, demonstrated complete certainty as to the identification of appellant; and finally, only a matter of some 12–14 hours had lapsed between the time of the rape and the pretrial investigation identification. See also *State v. Barnes*, 535 S.W.2d 602 (Mo.App.

1976); *State v. Arnold, supra* and *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

In addition to the foregoing, as regards the identification in this case, it has been held that even if there exists a suggestive identification, such does not invalidate an in-court identification if a sufficient independent basis for such identification exists. It has been held that the victim's ability to view an accused during the commission of the crime, accompanied by the victim's ability to describe the appearance and clothing of the accused, suffices, see *State v. Davis,* 507 S.W.2d 32 (Mo.App.1975), see also *State v. Harris,* 571 S.W.2d 443 (Mo.App.1978).

In the instant case the victim gave a description of appellant as to his physical appearance and clothing. Upon trial, the appellant was clean-shaven and his hair was shortened. The victim testified as to the change in appearance between the time of the rape and the trial.

Considering the "totality of circumstances" it must follow that there is no merit to appellant's contention that identification of appellant during the pretrial investigation was "impermissibly suggestive" thereby invalidating the in-court identification of appellant.

Point III is ruled against appellant.

■ As his final point of error, appellant claims his rights to a fair and impartial trial were prejudiced and the trial court committed plain error by its conduct of the trial in asking or suggesting questions tending to elicit answers favorable to the prosecution. Appellant alleges further prejudice because of critical remarks toward defense counsel. It is appellant's contention that such conduct created an impression for the jury that the court believed appellant was guilty.

Appellant raises this point for the first time on appeal. He alleges plain error and by virtue of such allegation, this court takes up the allegation and reviews it on that premise only. Appellant argues 12 separate incidents in which he alleges the prejudicial conduct by the trial court. These are:

"Mr. Eschbacher, would you consider it as evidence of guilt?

VENIREMAN ESCHBACHER: No, I would not.

MR. TOBIN: Anyone else? Mr. Clark?

VENIREMAN CLARK: Could I ask a question?

MR. TOBIN: Yes.

VENIREMAN CLARK: Would this be because he wasn't asked to appeal or because he refused to?

THE COURT: Well, Jurors aren't presumed to come in knowing the law, Mr. Tobin. Why did you start asking them about that without telling them what the law is?"

\*　　\*　　\*　　\*　　\*　　\*

"Q. Do you know why he asked if you were going to be there in a little while?

MR. TOBIN: Objection, Your Honor, also calls for conclusion.

THE COURT: Yes. The way the question is put, you can ask if she understands why.

MRS. FORTNEY. I will withdraw the question.

Q. (By Mrs. Fortney) Did Daniel Kent indicate why he wanted to know if you were going to be there in a little while?

A. No."

\*　　\*　　\*　　\*　　\*　　\*

"Q. Now let me hand you what has been marked as State's Exhibit 5 and ask you, looking at that photograph, can you tell what is underneath the table there?

A. Yes.

Q. What is that?

A. Pair of white socks.

Q. Did you own any white socks?

A. No, I don't wear socks.

Q. So you had not white socks in your home?

A. Not that I—I didn't know I did if I did.

Q. You've never seen those socks before?

A. No."

\*　　\*　　\*　　\*　　\*　　\*

"Q. During examination I had you look at all the photographs. One of these photographs you indicated there is what appeared to be socks under a table?

A. Yes.

Q. You stated those did not belong to you as you do not wear socks?

A. Yes.

Q. Were there any white socks in your home at all?

A. Yes.

Q. Where were there white socks in your home?

A. In my back bedroom.

Q. Who did those socks belong to?

A. My ex-husband.

Q. Let me hand you what has been marked as State's Exhibit 9 and let me ask you if you can identify those?

A. Yes.

Q. What are those?

A. Those are white socks belonging to my ex-husband.

Q. Are you positive those are ones that belonged to him or are they similar in appearance to ones that belonged to him?

A. They are similar in appearance to the ones that belonged to him."

\*   \*   \*   \*   \*   \*

"Q. On direct examination, you first testified that you didn't recollect what appeared to be socks in that photograph, and that you don't wear socks, and then later you've told us that the socks you were shown looked like socks that were in your apartment. Could you tell me how long you've been divorced from your husband?

A. A year.

Q. And when he and you were divorced, he moved out, didn't he?

A. Yes.

Q. Has he had occasion to come over and leave socks there?

MRS. FORTNEY: Your Honor, I'm going to object to that and ask the jury be instructed to disregard that question.

MR. TOBIN: Your Honor, her testimony was this looked like her ex-husband's socks.

MRS. FORTNEY: The relevancy of whether or not he's been back over there and left socks, I don't see what relevancy it has to this case.

THE COURT: Overruled.

Q. (By Mr. Tobin) You may answer.

A. Okay. When I saw the picture, it wasn't close enough to tell.

Q. That wasn't my question. My question is whether or not in the past year your ex-husband has had occasion to come over and leave socks there?

A. I don't understand the question.

Q. Well, my question is since you—

THE COURT: When were they left there, why don't you ask her.

Q. (By Mr. Tobin) When were they left there?

A. Those socks had been there since we were living together.

THE COURT: In other words, he didn't take them with him when you separated?

THE WITNESS: No, he didn't take them away."

\*   \*   \*   \*   \*   \*

"Q. Why did you return to the apartment?

A. They paged us at the show and I called back, and the policeman said—

MR. TOBIN: Objection, Your Honor, to what anybody may have said over the phone to him.

MRS. FORTNEY: Your Honor, it's not offered for the truthfulness, it's merely to show why this witness did what he did, the conduct he took because of what was said to him.

THE COURT: Was the result of what you were told on the phone that caused you to go back home?

THE WITNESS: Yes, it was.

THE COURT: All right. That's sufficient.

MRS. FORTNEY: You may answer, sir. Is that the Court's ruling he may respond to the question?

THE COURT: Well, I don't know, it's—do you want to come and tell me what you anticipate the answer will be out of the hearing.

[Proceedings out of the hearing of the jury]

MRS. FORTNEY: I anticipate that his answer will be that he was told by the police to come home because a rape had occurred, something had happened to (the victim). I think the witness has a right to explain his course of conduct and why he left the way he did and did so because of what he was told.

THE COURT: Is there going to be any dispute about whether there was rape?

MR. TOBIN: Well, yes.

THE COURT: Oh, there is?

MR. TOBIN: The problem here is that the text or the content of this phone conversation is irrelevant, as long as he's already answered he came back to the apartment as a result of something he heard over over [sic] the telephone.

[The proceedings returned to the open Court].

THE COURT: Objection sustained."

\* \* \* \* \* \*

"MR. TOBIN: Objection, that last answer was not responsive to the question.

THE COURT: I'm sorry. I didn't get it, would you read it back.

MR. TOBIN: I think the question was whether—

THE COURT: Would you mind letting her read back according to my instructions."

\* \* \* \* \* \*

"Q. So your child was awake?

A. Yes, sir.

Q. Your child was playing, wasn't he, during the time you were watching television?

A. She—No, she was sitting on the couch watching this program with me.

Q. How old is she?

A. She's four. She's five now, she was four then.

Q. And your four-year-old daughter just sat there and watched television without moving around the whole time you were watching television?

A. No.

MR. [sic] FORTNEY: I object to that as being argumentive.

THE COURT: Sustained. Well, it's not argumentive, but it includes a fact or assumes a fact that has not been testified. She didn't say that."

\* \* \* \* \* \*

"A. No. Well, I'll take that back. She said something about—

MR. TOBIN: Objection, Your Honor, hearsay.

THE COURT: Overruled.

MR. TOBIN: Your Honor, could we approach the bench?

THE COURT: I don't think it's necessary to approach the bench. The reason it's admissible is because you cross-examined her on the conversation that she had with this lady, as I recall.

MR. TOBIN: Yes, Your Honor, but could we approach the bench?

THE COURT: All right."

\* \* \* \* \* \*

"MR. TOBIN: Objection, Your Honor, assuming facts not in evidence.

THE COURT: I beg your pardon.

MR. TOBIN: The question assumes a fact not in evidence.

THE COURT: Overruled on that ground."

\* \* \* \* \* \*

"A. I was sitting in the chair, he put one arm under my leg and the other behind me.

Q. You did?

A. I did.

Q. You were sitting like this.

THE COURT: She said he put one arm under my legs and one in my back."

\* \* \* \* \* \*

"Q. Dr. Ma, the words that are printed in that block as far as what she told you, what the history was, that's really an interpretation of what she said to you, written down briefly for your report; is that correct?

MR. TOBIN: Objection, Your Honor, leading.

THE COURT: Well, I'm going to sustain it on another ground. I don't understand it. The question is a little confusing. Would you like to restate it?

MRS. FORTNEY: All right. I will restate it, Your Honor.

Q. (By Mrs. Fortney) When you write down history, as you did in this case, where do you derive what you have written down from? Are those specific words that were told to you by the victim or is it merely your interpretation of what she stated?

A. It's a summation of what I have heard from the patient.

THE COURT: Well, I think—excuse me for interrupting—is your question—do you attempt to quote verbatim or do you attempt to paraphrase?

THE WITNESS: Generally not, Your Honor.

THE COURT: Generally not what?

THE WITNESS: We don't quote verbatim, because oftentimes the history comes out in scattered sequence, not necessarily in a chronological fashion."

[The notation referred to was read into the record and indicated that Dr. Ma had been told by (the victim) that "the boy friend of her employer" had beaten and raped her.]

\* \* \* \* \* \*

"A. It would have been approximately 400 hours, 4:00 o'clock in the morning.

Q. 4:00 o'clock in the morning, preceding the 30th, the day following the 30th, 31st?

A. Correct.

THE COURT: You said 'preceding.'

MRS. FORTNEY: I'm sorry, yes, I meant following.

Q. (By Mrs. Fortney) Upon your arrival there did you contact a Daniel Kent?

THE WITNESS: Yes I did."

\* \* \* \* \* \*

(Counsel approached the bench and the following proceedings were had:)

"MRS. FORTNEY: At this time State would request permission to pass the exhibits in this case to the jury. They have all been admitted in evidence.

MR. TOBIN: I wanted to make sure of that, too.

MRS. FORTNEY: I believe they have.

MR. TOBIN: Tell me which ones.

THE COURT: Apparently, from what you said earlier, nobody has been keeping a record of which ones are admitted. If you have any doubt which ones are admitted, it doesn't hurt to offer them twice.

MR. TOBIN: We don't want this one passed.

MRS. FORTNEY: I'm—that's not even been offered. I don't see any need for it.

THE COURT: Don't you want to offer it in evidence. It's the basis of his test. That doesn't mean you have to pass it to the jury.

MRS. FORTNEY: I should, Your Honor.

THE COURT: You want to pass it?

MRS. FORTNEY: I will offer it at this time.

THE COURT: What number is it?

MRS. FORTNEY: 21.

THE COURT: It's received into evidence.

(Whereupon, State's Exhibit 21, so offered, was received in evidence.)

THE COURT: The other card has it been received in evidence?

MRS. FORTNEY: Yes.

MR. TOBIN: Are you going to pass that?

MRS. FORTNEY: Yes. The photographs were all offered and received.

THE COURT: You're going to pass the latent print. Why?

MRS. FORTNEY: I thought maybe they might like to look at it.

THE COURT: They might like to look at the other one, too. Suppose they say why can't we see it. What am I going to say then? They can't gain anything by it.

MRS. FORTNEY: Okay. Six photographs.

THE COURT: What's the numbers?

MRS. FORTNEY: State's Exhibit 3, 4, 5, 6, 7 and 8.

MR. TOBIN: No objection.

THE COURT: Anything else?

MRS. FORTNEY: State's 12, State's Exhibit 18.

MR. TOBIN: That's the one we are not sure about.

MRS. FORTNEY: No, I'm sure that was offered and received.

THE COURT: Do you want to offer it to be sure.

MRS. FORTNEY: At this time, Your Honor, State would offer into evidence what has been marked as State's Exhibit 18.

THE COURT: Do you have any objection?

MR. TOBIN: No, I don't think we have any objection.

THE COURT: It's received if it wasn't received before.

(Whereupon, State's Exhibit No. 18, so offered, was received in evidence.)

MRS. FORTNEY: State's Exhibit 9 and 10.

MR. TOBIN: No objection.

MRS. FORTNEY: State's Exhibit 14.

(An off-the-record discussion was had:)

MRS. FORTNEY: At this time, Your Honor, the State would offer into evidence what has been marked as State's Exhibit 14.

MR. TOBIN: Defense objects, Your Honor. I don't believe that the officer that collected them testified as to their identification.

MRS. FORTNEY: I know he did.

THE COURT: Well, objection overruled. It's received into evidence.

(Whereupon, State's Exhibit No. 14, so offered, was received in evidence.)

MRS. FORTNEY: State's Exhibit 16, State's Exhibit 17.

MR. TOBIN: No objection.

THE COURT: They are received, if they haven't already been."

\*    \*    \*    \*    \*    \*

"THE COURT: Any more questions of this witness?

MR. TOBIN: No.

THE COURT: You may step down.

MR. TOBIN: Your Honor, may he be excused?

THE COURT: I don't know what you mean. Why are you asking me?

MR. TOBIN: I wanted to make sure the prosecutor didn't want to recall him.

THE COURT: Ask her, not me. I don't put on witnesses."

\*    \*    \*    \*    \*    \*

Particular effort has been employed to illustrate the lack of validity of appellant's final point. Further, by the alleged conduct of the trial court, appellant suffered no prejudice and there was no manifest injustice or any miscarriage of justice. In addition, appellant has leveled a very serious charge upon the trial court which, upon the reading of the above excerpts of the transcript, totally refutes appellant's final allegations.

The record herein reveals an impartial conduct of this trial by the court, proper leeway for counsel on both sides to try their case under proper trial procedures and moreover, a balanced relationship between both counsels by the court. Appellant's final point is found to be totally without any merit in fact or substance.

Point IV is ruled against appellant.

This appellant was found guilty by a jury of his peers for the crime of which he stood accused after a fair and impartial trial.

There is no error upon this record as alleged.

The judgment of the trial court, for the reasons set forth herein, is in all respects affirmed.

All concur.