STATE of Missouri, Respondent,

v.

Anthony LEWIS, Appellant.

No. WD 32807.

Missouri Court of Appeals,
Western District.

July 27, 1982.

James W. Fletcher, Public Defender, Gary L. Gardner, Asst. Public Defender, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before SHANGLER, P. J., and PRITCHARD and DIXON, JJ.

SHANGLER, Presiding Judge.

The defendant was convicted by a jury of stealing without consent [§ 570.030] and sentenced to a term of three years imprisonment. The defendant contends that the identification procedure was erroneous and that there was other prejudice by the failure of the prosecution to give discovery.

Two young women, Kimberly and Barbara, were enroute home after work and stood on a downtown corner as they awaited a transit bus. They noticed two men as they stood across the street catercorner. One was black, the other was white. The black man was attired as a jogger, in blue togs and white tennis shoes. The men lin-

gered on the corner for some minutes and then they left. Then, the black man in the jog suit loped up to Kimberly from behind and with the words: "Watch it, girls," or "Hold it, girls," or "Hold it," snatched her purse and ran off across a nearby automobile parking lot. The police arrived soon thereafter. Kimberly described the thief as a black man, from 20 to 30 years of age, slim, about 6 feet tall and some 160 pounds, face covered with a beard and mustache, and who spoke in a deep voice. Barbara described the thief in those essential terms, except that she recalled he wore a blue suede jacket rather than a brown one, as Kimberly reported. Kimberly testified that she turned to look when she heard, "Watch it, girls," and saw the defendant in full face for three or four seconds. Barbara testified that she saw the thief for some minute or minute-and-a-half as he jogged toward them.

The criminal event was on November 29, 1980, at about 6 p. m. Twelve days later, on December 11, 1980, detective McKee came to their home to show them five or so photographs. That same evening the girls viewed a lineup at the police department and each of them, separately, identified the defendant as the culprit. Then, at the trial, each of them identified the defendant once again as the thief. The detective testified that the five photographs he displayed to the two witnesses on the day of the lineup could not be located. The defendant contends that the evidence that there was a photographic showup was a surprise and, further, that the failure by the prosecution to disclose them was a violation of discovery.

The defendant reticulates these two contentions of error into a prejudice of due process. He argues that the neglect of the police to preserve the photographs shown to the witnesses induces a presumption that they were more suggestive than reliable, that the failure of the police detective to testify about the photographs on the pretrial suppression hearing, and the meager opportunity of the witnesses otherwise to view the thief on the event of the crime all mark the identifications of the defendant as grounded on an irremediably suggestive and nonreliable procedure.

■ The argument simply is not valid. The demand that the police retain a rogues gallery of photographs for the eventuality of a trial is not a realistic logistic, and the law does not impose such a regimen. *State v. Franklin*, 547 S.W.2d 849, 852[4] (Mo.App. 1977). Nor was the failure of the prosecution to disclose the photographs a violation of the pretrial discovery order entered under Rule 25.03. That rule, to the extent the terms bear even colorably, does not encompass investigative photographs of the kind shown to the witnesses. Rule 25.03(A)(6) requires discovery to the defendant of photographs "which the state intends to introduce into evidence" and (8) any "photographic . . . surveillance . . . relating to the offense with which the defendant is charged"—but they do not encompass what the defendant claims under the pretrial order framed in terms of the discovery rules.

■ Nor can the defendant object as a surprise at the trial that the witnesses viewed photographs before the lineup display. The contention that the police detective gave no testimony about the photographs on the pretrial suppression hearing, and so the defendant was surprised by that disclosure at the trial lacks candor. The officer in fact did not testify about the photographs on the motion to suppress—he simply was not asked. The victim Kimberly, however, did testify at pretrial—and quite clearly—that "[t]he detective called me and said he was coming over and was going to show us pictures and then he took us down for a lineup." That was the first either the prosecutor or defense counsel heard of that event and, no doubt, explains why the detective, and antecedent witness, was not questioned on that subject at that pretrial suppression of identification hearing. The defendant, in any event, could not have been taken unaware later in that same day when the same testimony was emitted by the witnesses.

The defendant argues the tangent, nevertheless, that the failure of the police to

retain the photographs forces the presumption that the identifications were not only suggestive but impermissibly suggestive. Quite apart from the insufficiency of a contention which would require the police to retain a catalogue of miscellaneous investigative photographs [State v. Franklin, supra], the argument rests on mere hypothesis. The defendant made no effort, either at pretrial or at the trial, to delve the circumstances of the photographic display. There was no inquiry as to what the photographs actually depicted or whether the police officer disposed them to an identification of the defendant, or even a probe of the trial testimony of witness Barbara that "we looked at one [photograph] that looked like him at the time." In short, the defendant made no effort to determine whether the display of the photographs, the actual content, or the police procedure were suggestive, not presumptively, but in fact. The record discloses no suggestive police action to induce the identifications rendered at the lineup or at the trial. State v. Gaskin, 618 S.W.2d 620, 623[3] (Mo.1981). There is no basis for a presumption to the contrary.

■ There is other, technical, reason to refuse the contentions of the defendant that the evidence of photographs was a surprise—both as a matter of discovery required but not made and as a source of misidentification. That testimony came in without timely objection. The defense became aware that there were photographs and that they were used by the witnesses in the identification process in the suppression hearing preliminary. There was no objection then that discovery was violated. The testimony was iterated at the trial immediately subsequent, and only at the conclusion of the full direct testimony did the defendant object and then asked for nothing less than a mistrial. It was too late by then for the court to avoid the effect of the testimony or to impose a sanction condign to the dereliction. Rule 25.16; State v. Johnson, 605 S.W.2d 151, 153[2, 3] (Mo.App.1980). The failure to make timely objection preserved nothing for review. State v. Daniels, 487 S.W.2d 465, 468[1, 3] (Mo.1972).

■ The constitutional due process rationale protects an accused from preindictment police procedures so suggestive as to conduce to unreliable identifications. Manson v. Brathwaite, 432 U.S. 98, 114[3, 4], 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977). That rationale encompasses photographic procedures [Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968)] as well as other identification confrontations [Neil v. Biggers, 409 U.S. 188, 198[6–11], 93 S.Ct. 375, 381, 34 L.Ed.2d 401 (1972)]. The question is always " 'whether under the "totality of the circumstances" the identification was reliable even though the confrontation procedure was suggestive.' " Manson v. Brathwaite, supra, l. c. 106. That poses the dual analysis—whether the police investigative procedures were impermissibly suggestive; and, if so, was there a substantial likelihood of misidentification at the trial on that account? State v. Higgins, 592 S.W.2d 151, 159[12] (Mo. banc 1979). We have determined that there is no issue made out that the photographs were suggestive. The defendant does not contend that the lineup or other preindictment confrontation induced an unreliable trial identification, therefore the due process principle the defendant asserts does not come into play. He contends only that apart from the "presumption" [from the police failure to preserve and produce the photographs] that the photographic confrontation was impermissibly suggestive, the identification was without reliable basis because the opportunity of the witnesses was so fleeting—some three or four seconds for one and a minute or so for the other. That, however, does not pose a due process objection to an identification corrupted by police suggestiveness, but a matter of witness credibility and jury belief. State v. McGrath, 603 S.W.2d 518, 521[4–6] (Mo. 1980). These spans of observation of the thief by the witnesses were not so brief as to preclude the identification evidence as a matter of law. It was for the jury to assess the weight. State v. Carson, 501 S.W.2d 503, 506[1, 2] (Mo.App.1973).

The judgment is affirmed.

All concur.